552 So.2d 643 (1989)
Herbert PRESTRIDGE, et al., Appellees,
v.
Jessie E. SHINAULT, et al., Appellants.
No. 20,907-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Rehearing Denied December 1, 1989.
Madison, Garrett, Brandon, Hamaker, Wilson & Tugwell by Ralph N. Jackson, Sterlington, for plaintiffs/appellees.
Sooter & Foote by Victor H. Sooter, Alexandria, for defendants/appellants, Const. Systems, Inc. & United Fidelity and Guar. Co.
Stassi & Rausch by John A. Stassi, II, New Orleans, for defendant/appellee, Mississippi Extended Care Centers, Inc.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
Plaintiffs, trustees of a union Health and Welfare Fund, sued in state court for contributions *644 allegedly due under a collective bargaining agreement. Against all defendants the plaintiffs sought the contributions, interest, penalties and fees allowed by a federal statute. Against the general contractor, its surety and the property owner the plaintiffs sought recognition of and execution on a lien as allowed by a state statute. The general contractor and surety petitioned for and received removal to federal district court, where the claims against the subcontractor (the actual employer) were dismissed. The claims against the remaining defendants were remanded to state district court where the plaintiffs received a money judgment against the general contractor and its surety, and recognition of the lien rights against the surety. The general contractor and its surety now appeal. For the reasons expressed, we reverse the judgment and dismiss the lawsuit.

Facts
The plaintiffs are trustees of the Shreveport Electrical Health and Welfare Fund and the International Brotherhood of Electrical Workers, Local No. 194, a labor organization as defined by the Labor Management Relations Act of 1947 (29 U.S.C.A. § 186). The trust fund was established pursuant to a collective bargaining agreement. The trustees are fiduciaries and the trust funds involved are "employee welfare benefit plans" and "welfare plans" as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. §§ 1001 et seq. The trust funds receive their capital from employer contributions for covered employees. The trustees are charged with collecting contributions from employers who fail to make payments voluntarily.
Union members Wierick, Cranford and Scroggins were employed by Jessie Shinault, doing business as DeSoto Electrical Co. Shinault was signatory by a letter of assent to a collective bargaining agreement between the union and the Northeast La. Chapter of National Electrical Contractors Association. He was performing electrical subcontracting for the construction of the Westwood Manor Nursing Home in Shreveport. This property was owned by Mississippi Extended Care Centers Inc.; the general contractor was Construction Systems Inc. ("CSI"). CSI was not a member of the contractors association and was not a party to the collective bargaining agreement.
Shinault defaulted on his employer contributions to the fund. The fund filed a lien on March 30, 1984, in Caddo Parish, pursuant to the Louisiana Private Works Act, LSA-R.S. 9:4801 et seq. The plaintiffs brought the instant lawsuit against Shinault and the property owner on December 12, 1984, demanding judgment for the balance of the contributions, interest, penalties, attorney fees and costs, as provided by ERISA, 29 U.S.C.A. § 1132(g)(2). The plaintiffs also demanded recognition of their lien rights, as provided by the Private Works Act, LSA-R.S. 9:4803 A(3). CSI subsequently secured a bond from United States Fidelity and Guaranty Co. ("USF & G") to cover the claim, thus cancelling the lien. The plaintiffs then added CSI and USF & G as defendants.
CSI and USF & G petitioned for removal to federal district court on the basis that the plaintiffs' action arose under ERISA, a law of the United States. In federal court, CSI and USF & G moved to dismiss on several grounds, including supersedure by federal law; the plaintiffs moved to remand the case to state court. By order of July 3, 1985, the court granted the motion to dismiss, citing lack of subject matter jurisdiction. The court noted, nevertheless, that the lien claim would not be preempted by ERISA. See Memorandum Ruling (7/3/85), 9. Later the court amended this order sua sponte. By order filed September 27, 1985, it dismissed the claims against Shinault and remanded the claims against the other defendants to state court. The federal court reasoned that these claims, asserting a state law lien, against these defendants, who are not employers under ERISA, provided no basis for federal jurisdiction. The court further noted that a claim based on a state law does not arise under federal law merely because a defendant may defend on the ground that the *645 state law is preempted by a federal law. See Memorandum Ruling (9/26/85).
Back in state court the defendants urged various exceptions including lack of subject matter jurisdiction and no cause of action in that the state statute, R.S. 9:4803 A(3), was preempted by ERISA. The trial court overruled all exceptions and ultimately rendered judgment on September 22, 1988 in favor of the plaintiffs and against defendants CSI and USF & G, for $10,696.19 plus interest. The judgment recognized the plaintiffs' lien rights against the USF & G bond. From this judgment CSI and USF & G appeal, urging the trial court erred in holding that R.S. 9:4803 A(3) was not preempted by ERISA or by the Labor Management Relations Act. The plaintiffs answered the appeal but ultimately abandoned their answer. Plaintiff's Orig.Br., 3.

Discussion
Louisiana's Private Works Act provides in pertinent part:
§ 4803. Amounts secured by claims and privileges
A. The privileges granted [by the act against the property owner] and the claims granted [by the act against the contractor] secure payment of:
* * * * * *
(3) Amounts owed under collective bargaining agreements with respect to a laborer's or employee's wages or other compensation for which a claim or privilege is granted and which are payable to other persons for vacation, health and welfare, pension, apprenticeship and training, supplemental unemployment benefits, and other fringe benefits considered as wages by the secretary of labor of the United States * * *. Trustees, trust funds, or other persons to whom the employer is to make such payments may assert and enforce claims for the amount in the same manner and subject to the same procedures provided for other amounts due laborers or employees granted a claim or privilege under this Part. (emphasis added)
The act therefore expressly provides that trustees or trust funds may assert a lien on an immovable for the amount owed under a collective bargaining agreement for laborers' or employees' health and welfare funds. This would include claims on behalf of an ERISA fund.
ERISA is a "massive undertaking" that comprehensively regulates, among other things, employee welfare benefit plans that, "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care or benefits in the event of sickness, accident, disability or death. 29 U.S.C.A. § 1002(1). ERISA places limits on where certain persons are empowered to bring a civil action. 29 U.S.C.A. § 1132 provides:
§ 1132. Civil enforcement
(a) Persons empowered to bring a civil action
A civil action may be brought
(1) by a participant or beneficiary
* * * * * *
(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
* * * * * *
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; * * *.
* * * * * *
(e) Jurisdiction
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.
* * *. (emphasis added)
*646 Three clauses regulate ERISA's general preemptive effect over state law: the preemption clause, the savings clause and the deemer clause. Pertinent to the instant case is the preemption clause, which provides as follows:
§ 1144. Other laws
(a) Supersedure; effective date
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
The state statute asserted by the plaintiffs, R.S. 9:4803 A(3), is a "State law" under 29 U.S.C.A. § 1144(c).
Since the time of the federal district court's rulings in this case, the United States Supreme Court has addressed the preemptive force of ERISA over state laws. In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), an employee brought a common-law bad-faith tort action for the misprocessing of benefit claims by the insurer under his ERISA-covered employee benefit plan. The Court held this general common law preempted by ERISA. The Court's discussion is very pertinent, so we quote it:
To summarize the pure mechanics of the provisions quoted above [29 U.S.C.A. §§ 1144(a), 1144(b)(2)(A), 1144(b)(2)(B)]: If a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted. [§ 1144(a).] * * *
"[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. `"The purpose of Congress is the ultimate touchstone."'" Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) [additional citations omitted]. * * * We have observed in the past that the express pre-emption provisions of ERISA are deliberately expansive, and designed to "establish pension plan regulations as exclusively a federal concern." Alessi v. Raybestos-Manhattan Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Pilot Life, supra [107 S.Ct.] at 1552.
The court continued:
The Solicitor General, for the United States as amicus curiae, argues that Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) [29 U.S.C.A. § 1132(a)] be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress. * * * We agree. The conclusion that § 502(a) was intended to be exclusive is supported, first, by the language and structure of the civil enforcement provisions, and second, by legislative history in which Congress declared that the pre-emptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act (LMRA), 61 Stat. 156, 29 U.S.C. § 185.
The civil enforcement scheme of § 502(a) is one of the essential tools for accomplishing the stated purpose of ERISA. * * *
* * * * * *
In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted... provide strong evidence that Congress did not intend to authorize other *647 remedies that it simply forgot to incorporate expressly." Pilot Life, supra [107 S.Ct.] at 1555, 1556.
The court elaborated on the comparison between ERISA's civil enforcement provisions and § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. Congress was aware of the powerful preemptive force of § 301, which entirely displaces any "state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract." The court continued:
Congress' specific reference to § 301 of the LMRA to describe the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a). * * * The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison of ERISA's § 502(a) to § 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws. Pilot Life, supra [107 S.Ct.] at 1558.
Admittedly the plaintiff in Pilot Life was suing on his own behalf. The court found that his action was under § 1132(a) and thus subject to exclusive federal jurisdiction. In the instant case the plaintiffs are fiduciaries suing on employees' behalf pursuant to § 1132(a)(3). The preemption clause of ERISA makes the reasoning of Pilot Life equally applicable to the instant case.
The Supreme Court addressed a related question in Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). There the issue was not whether a certain state law (general state contract law and tort common law) was preempted by ERISA, but whether a concededly preempted state law cause of action for misprocessing benefit claims could be removed to federal court by virtue of ERISA. The precise issue had been left open in the earlier opinion of Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), which held that ERISA preemption, without more, does not convert a state claim into an action arising under federal law. The Court found that the state law claims in Metropolitan Life fell within ERISA's civil enforcement provisions. Thus the employee's claim for recovery and enforcement of benefits was displaced by ERISA and could be removed to federal court. In other words, a complaint filed in state court, though it purported to raise state law issues only, is nevertheless removable to federal court if the state law is preempted by ERISA's civil enforcement provisions.
The Court has held in other cases that ERISA does not preempt every state statute. See, e.g., Mackey v. Lanier Collections Agency and Serv., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); Massachusetts v. Morash, ___ U.S. ___, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). The upshot of these cases is that ERISA will not preempt every state law provision, but it will preempt any that relates to ERISA's exclusive enforcement provisions.
In Louisiana, courts have also examined ERISA's preemptive force. A federal district court and state appellate court have both found ERISA's civil enforcement provisions preempt LSA-R.S. 22:657, which sets penalties and fees higher than ERISA. Taylor v. Blue Cross/Blue Shield of New York, 684 F.Supp. 1352 (E.D.La.1988); Smith v. Guardian Life Ins. Co., 546 So.2d 320 (La.App. 3d Cir.1989). The state Supreme Court has held that LSA-R.S. 22:213 B(7), which regulates the termination of health insurance policies, does not conflict with ERISA and is therefore not preempted. Soniat v. Travelers Ins. Co., 538 So.2d 210 (La.1989). Soniat is based on the savings clause mentioned earlier, 29 U.S.C.A. § 1144(b)(2)(A).
Of particular interest, however, is a federal district court opinion which squarely addresses the statute at issue in the instant *648 case. In Iron Workers Mid-South Pension Fund v. Terotechnology Corp., 700 F.Supp. 310 (M.D.La.1988), an employee benefit trust sued a contractor who had failed to make contributions to the plan as required by collective bargaining agreements. The trust also sought recognition of a lien against the property owner, under R.S. 9:4803. The property owner moved for dismissal, urging preemption by ERISA. The district court carefully considered the language of 29 U.S.C.A. § 1144(a) and the jurisprudence of Pilot Life, supra, as outlined above. It found that the plaintiffs were attempting to avoid ERISA's exclusive mechanism for enforcing contributions to the benefit plan by giving effect to a state statute that circumvented the Congressional scheme. The court therefore found R.S. 9:4803 preempted.
Simultaneously, a state appeal court in California found, in a factually apposite case, that ERISA preempted a California law whose substance is virtually identical to R.S. 9:4803. See Carpenters Southern Calif. Admin. Corp. v. El Capitan Dev. Corp., 210 Cal.App.3d 1052, 243 Cal.Rptr. 132 (5th Dist.1988), review granted 246 Cal. Rptr. 209, 753 P.2d 1 (Cal.1988); Cal.Civ. Code § 3111 (West).
These decisions, though not binding, correspond with our understanding of ERISA's preemptive force and our interpretation of Pilot Life, supra. R.S. 9:4803 purports to create a state cause of action for a fiduciary to enforce the terms of a health and welfare trust plan. ERISA provides that such an action is exclusively federal. 29 U.S.C.A. § 1144(a). The state court had no authority to exercise judicial power in this preempted field. The lien claim depends on the validity and consequences of a collective bargaining agreement that establishes an ERISA benefit plan. The failure of one party to make contributions results in the denial of benefits to the others. Exclusive federal remedies are provided, and these do not include state-law laborers' lien rights against nonparties to the agreement. Even state law provisions that are arguably drafted with the "good intention" of furthering a federal interest are not exempt from ERISA's preemptive scope. See Mackey v. Lanier Collections Agency, supra, 108 S.Ct. at 2185. We conclude that R.S. 9:4803 A(3), upon which the instant judgment is based, has been preempted by ERISA and displaced by ERISA's civil enforcement procedures. The trial court should have sustained CSI and USF & G's exceptions of lack of subject matter jurisdiction and no cause of action. The judgment therefore will be reversed.
The plaintiffs rely heavily on the federal district court's first ruling, which states in dictum that the lien action is not preempted. We note that this ruling came before the decisions in Pilot Life, supra, which guides our analysis, and Terotechnology, supra, which is precisely on point. The plaintiffs also rely on earlier cases, such as Carpenters Southern Calif. Admin. Corp. v. Majestic Housing, 743 F.2d 1341 (9th Cir.1984), and later cases such as Giardiello v. Balboa Ins. Co., 837 F.2d 1566 (11th Cir.1988). The court in Majestic Housing, however, specifically reserved the issue of preemption. 743 F.2d at 1346. The correct resolution is announced in Metropolitan Life Ins. Co. v. Taylor, supra. We conclude that ERISA has preempted the substance of R.S. 9:4803 A(3).
The judgment is therefore reversed and the petition dismissed at the plaintiffs' cost.
JUDGMENT REVERSED; PETITION DISMISSED.

ON APPLICATION FOR REHEARING
Before HALL, NORRIS, LINDSAY, SEXTON and HIGHTOWER, JJ.
Rehearing denied.