William WILLIAMS, etc., et al.,
Plaintiffs, Appellants,

v.

ASHLAND ENGINEERING CO., INC.,
et al., Defendants, Appellees.

No. 94–2046.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1995.

Decided Jan. 31, 1995.

Robert O. Berger, Boston, MA, for appellants.

Bradford R. Carver, with whom Edward F. Vena, Michael S. Levitz, and Vena, Truelove & Riley, Boston, MA, were on brief, for appellees.

Before SELYA, BOUDIN and STAHL, Circuit Judges.

SELYA, Circuit Judge.

We are reminded today that malapropisms, despite their semantic shortcomings, often describe the human condition with unerring accuracy. There are, for example, certain situations that actually do evoke the sensation of "*déjà vu* all over again."[1]  We explain

---

1.  This epigram is often attributed to Lawrence P. (Yogi) Berra, a man as famous for mangling the English language as for belting baseballs.  Berra coined many aphorisms—but not this one.  *See*

Ralph Keyes, *Nice Guys Finish Seventh; Phrases, Spurious Sayings and Familiar Misquotations* 152 (1992) (noting that "although this is commonly cited as a 'Berra-ism,' Yogi Berra denies

below why this appeal falls into that category.

In *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992), the fiduciary of several union-sponsored employee benefit plans brought suit to enforce a lien on real property owned by a university. He alleged that an electrical contractor hired to construct improvements to school buildings had employed union members to do the work; that the contractor, heedless of its obligations under a collective bargaining agreement, neglected to defray the workers' employee benefit contributions; and that a state statute, Mass. Gen.L. ch. 254, quoted in the margin,[2] authorized the fiduciary to collect unpaid contributions by asserting a mechanic's lien against real property that had been improved through the plan participants' labor. *See McCoy*, 950 F.2d at 15. We held that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988), and specifically, ERISA § 514(a), 29 U.S.C. § 1144(a) (commanding that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"), preempted use of the Massachusetts mechanic's lien law to recoup the unpaid contributions. *See McCoy*, 950 F.2d at 18–20.

The case at bar is hauntingly reminiscent of *McCoy*, and, thus, triggers the sense of *déjà vu.* Appellants are the trustees of certain funds (the Funds) maintained by Local 4 of the International Union of Operating Engineers to fuel the union's employee benefit plans. In 1991, members of Local 4, then employed directly or indirectly by a subcontractor, Ashland Engineering Company (Ashland), participated in ongoing construction under the auspices of the Massachusetts Port Authority (Massport). A collective bargaining agreement obligated Ashland to contribute monies to the Funds commensurate with the number of hours each union member toiled on the Massport project.

In time, Ashland experienced financial problems, became delinquent on contributions to the Funds, and abandoned the Massport project. Noting that the general contractor, R.W. Granger and Sons, Inc. (Granger), had posted a performance-and-payment bond underwritten by United States Fidelity & Guaranty Company (USF & G), the trustees sued Ashland, Granger, and USF & G in an effort to extract the unpaid employer contributions.

The trustees' amended complaint contained three counts: count 1 sought to collect payments due from Ashland, count 2 sought to collect these payments from USF & G by invoking the Massachusetts statute under which the bond had been posted,[3] and count

---

ever saying it"). The phrase's origin is unknown.

**2.** The statute provides in relevant part:

A person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land, by virtue of an agreement with, or by consent of, the owner ... shall ... have a lien upon such building or structure....

For purposes of this chapter, a person shall include any employee of any employer and the trustee or trustees of any fund or funds, established pursuant to section 302 of the Taft Hartley Law (29 USC 186), providing coverage or benefits to said person. The trustee or trustees of any such fund or funds shall have all the liens under this chapter that any person has. The trustee or trustees shall also have the right to enforce said liens pursuant to this chapter. Mass.Gen.L. ch. 254, § 1 (1990). The statute also specifically provides that "the trustee or trustees of a fund or funds, described in section one, providing coverage or benefits to any person

performing labor under a written contract with a contractor, or with a subcontractor of such contractor," may file a lien notice, *id.* § 4, and enforce the lien by a civil action brought against the property owner, *id.* § 5.

**3.** The bond statute provides in pertinent part that, when state officials contract for construction of public buildings, they

shall obtain security by bond ... for payment by the contractor and subcontractors for labor performed or furnished and materials used or employed therein.... and for payment by such contractor and subcontractors of any sums due trustees ... authorized to collect such payments from the contractor or subcontractors, based upon the labor performed or furnished as aforesaid, for health and welfare plans, supplementary unemployment benefit plans and other fringe benefits which are payable in cash and provided for in collective bargaining agreements....

Mass.Gen.L. ch. 149, § 29 (1990).

3 sought to reach an asset of Ashland purportedly held by Granger—the bond—and to apply the proceeds to Ashland's debt.

Ashland did not defend and, therefore, count 1 is no longer velivolant. On June 1, 1993, the parties filed cross-motions for summary judgment on the two remaining counts. The district court granted the defendants' motions, concluding that ERISA preempted the section 29 claim as it pertains to employee benefit plans, and that Granger held none of Ashland's assets. *See Williams v. Ashland Eng'g Co.*, 863 F.Supp. 46 (D.Mass. 1994). Following the entry of separate judgments, the trustees appealed.

In this venue, the trustees agree that *brevis* disposition is warranted—the record reveals no genuine issues of material fact—but they contend that the lower court ruled in favor of the wrong parties. Affording plenary review, *see, e.g., Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990), we affirm.[4]

■ The centerpiece of the trustees' appeal—count 2—is well within *McCoy*'s precedential orbit. In *McCoy*, we acknowledged that Congress painted with a broad brush when it added an express preemption clause to the ERISA canvas. We described that clause as "sweeping" and "extensive in its scope." *McCoy,* 950 F.2d at 16. We also noted that the Massachusetts lien law at issue in *McCoy* referred specifically to the trustees of employee benefit plans and purported to grant them certain singular rights. In our view, these features rendered the law especially vulnerable to preemption, for "[s]tate statutes which expressly grant preferential benefits to ERISA plans cannot withstand the preemptive force of ERISA § 514(a)." *Id.* at 20; *accord Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). Thus, *McCoy* made clear that, at a bare minimum, state laws which "specifically refer to ERISA plans and

grant them special treatment" are preempted regardless of a state legislature's good intentions or a particular law's consistency with ERISA's overall goals. *McCoy,* 950 F.2d at 18 (quoting *Mackey,* 486 U.S. at 829–30, 108 S.Ct. at 2185–86).

■ The statute before us today, Mass. Gen.L. ch. 149, § 29, invites comparison with the statute we confronted in *McCoy.* Section 29 requires, *inter alia,* that a general contractor working on a public project furnish bond to secure payment of "any sums due trustees ... for health and welfare plans." Such plans come under the protective umbrella that ERISA spreads over the workplace. *See* 29 U.S.C. § 1002(1)(B), (3) (defining covered employee welfare benefit plans); *see also McCoy,* 950 F.2d at 19–20. Since the statute specifically refers to ERISA-regulated employee benefit plans, and provides them with a special source of recovery for unpaid employer contributions, *McCoy* governs. Hence, the bond statute, as it applies to employee benefit plans, is preempted.

Appellants balk at the characterization of their case as *McCoy* redux. They loose an avalanche of arguments, but none is persuasive. Only four of these arguments require comment.

*First:* Appellants launch a ferocious attack on *McCoy,* intimating that it is wrongly decided and, therefore, should be limited to its facts. Statutes like the mechanic's lien law or the bond law, they tell us, affect employee benefit plans in "too tenuous, remote, or peripheral a manner," *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983), to warrant a conclusion that the statutes "relate to" such plans. This attack is wide of the mark.

First and foremost, we believe that our earlier opinion was—and is—clearly correct (that it is, so to speak, the real *McCoy* ). And we perceive no rational basis on which to distinguish between the mechanic's lien law and section 29 for the purpose of gauging ERISA's preemptive reach.

---

**4.** We eschew any independent discussion of count 3, inasmuch as we discern no error in the district court's stated reasons for granting summary judgment on that count. *See Williams,* 863 F.Supp. at 50.

Because the two statutes are quite plainly sisters under the skin, there is also a prudential barrier that blocks the path of appellants' attack. In a multi-panel circuit, newly constituted panels are, for the most part, bound by prior panel decisions closely on point. *See, e.g., Jusino v. Zayas,* 875 F.2d 986, 993 (1st Cir.1989); *Lacy v. Gardino,* 791 F.2d 980, 985 (1st Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). In this instance, we are bound by *McCoy.*

To be sure, there are two exceptions to this manifestation of *stare decisis* principles. An existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling. This exception is inapposite, for nothing of the kind has transpired here. The second exception pertains to those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind. *See generally Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1123 (7th Cir.1987) (discussing "complex relationship ... between a court and its own previous decisions").

Appellants try to wriggle through this loophole. They suggest that a case recently decided by the Third Circuit casts a new light on ERISA preemption by focussing on "whether the existence of ERISA plans is necessary for the statute to be meaningfully applied," *Keystone Chapter, Etc. v. Foley,* 37 F.3d 945, 957 (3d Cir.1994), and that this shifted focus renders *McCoy* obsolete. However, appellants mischaracterize the holding in *Keystone.* There, the court reviewed a state minimum wage statute that did not refer explicitly to ERISA plans. After finding that the statute failed to single out such plans for special treatment, the court invoked the meaningfulness test to determine whether the statute might be said to "relate to"

ERISA plans despite the absence of an express connection. *See id.* at 954–57. Since section 29 does single out ERISA plans for special swaddling, there is no need to consider the *Keystone* test in this case.[5]

**Second:** Next, the trustees contend that section 29 is, in effect, a law regulating insurance and, therefore, is shielded from preemption by ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) (a savings clause that, *inter alia,* renders ERISA preemption inapplicable to "any law of any State which regulates insurance"). This contention lacks force. In order to "regulate[ ] insurance" within the purview of this exception, a law must not merely have an impact on the insurance industry, or on particular insurance products, but must be directed *specifically* toward the business of insurance. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739–47, 105 S.Ct. 2380, 2389–93, 85 L.Ed.2d 728 (1985). Section 29 does not satisfy this criterion for two reasons.

In the first place, although surety bonds often are furnished by insurers, surety bonds are not insurance contracts, *see* Mass.Gen.L. ch. 175, § 107, and they are not subject to the commonwealth's insurance laws. *See Luso–Am. Credit Union v. Cumis Ins. Soc., Inc.,* 616 F.Supp. 846, 848 (D.Mass.1985); *General Elec. Co. v. Lexington Contracting Corp.,* 363 Mass. 122, 292 N.E.2d 874, 876 (1973). In the second place, section 29 only requires the posting of an acceptable bond, not necessarily the posting of a bond underwritten by an insurance company. A cash bond or a bond backed by, say, a letter of credit, surely would suffice. In a real sense, then, section 29's impact on the insurance industry is happenstance. Consequently, the statute cannot plausibly be deemed to be directed toward, or to regulate, the business of insurance.

**Third:** Appellants claim that, here, preemption is beside the point because the bonding company waived the defense by failing to assert it in the pleadings. This claim pres-

---

**5.** Indeed, the *Keystone* court itself found *McCoy* to be good authority, citing it with approval in holding that ERISA preempted a state adminis-

trative order that did specifically single out ERISA-regulated plans for special treatment. *See Keystone,* 37 F.3d at 955.

cinds from USF & G's answer to the trustees' complaint—an answer that did not mention preemption in so many words, but, rather, contained a general denial and raised, as an affirmative defense, failure to state a claim upon which relief could be granted.[6] On the facts of this case, however, appellants' claim is composed of more bleat than wool.

■ Generally speaking, a party must set forth all affirmative defenses in the pleadings, on pain of possible forfeiture. *See* Fed.R.Civ.P. 8(c);[7] *see also Conjugal Partnership v. Conjugal Partnership,* 22 F.3d 391, 400 (1st Cir.1994). Here, although USF & G's answer did not specifically mention a preemption defense, it did contain a broader Rule 12(b)(6) defense that was capable of encompassing preemption. *Cf. McCoy,* 950 F.2d at 22–23 (upholding preemption-based dismissal pursuant to Rule 12(b)(6)). The purpose of Rule 8(c) is to give the court and the other parties fair warning that a particular line of defense will be pursued. *See, e.g., Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,* 15 F.3d 1222, 1226 (1st Cir.1994). Hence, a defendant who fails to assert an affirmative defense at all, or who asserts it in a largely uninformative way, acts at his peril. *See, e.g., FDIC v. Ramirez–Rivera,* 869 F.2d 624, 626 (1st Cir.1989).

■ In determining whether general, non-specific language in a defendant's answer, as was used here, suffices to preserve an affirmative defense, an inquiring court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated. In this case, USF & G complied with the spirit, if not the letter, of Rule 8(c). Well

before the close of discovery—and six months prior to the filing of the cross-motions for summary judgment—USF & G wrote to appellants and amplified its position, asseverating that count 2 should be dismissed under Rule 12(b)(6) because ERISA preempted section 29. In the papers accompanying the cross-motions for summary judgment, both sides briefed the preemption issue. Thus, no ambush occurred.

■ Where, as here, a plaintiff clearly anticipates that an issue will be litigated, and is not unfairly prejudiced when the defendant actually raises it, a mere failure to plead the defense more particularly will not constitute a waiver. *See Conjugal Partnership,* 22 F.3d at 401; *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir.1986).

■ *Fourth:* Appellants' final attempt to resuscitate their claim against USF & G is hardly worth mentioning. It involves the resupinate assertion that the Supremacy Clause of the Federal Constitution, U.S. Const. art. VI, cl. 2, bars preemption of section 29. This assertion is doubly flawed. For one thing, it is new to the case, having been alluded to, but not developed below, and accordingly, it is procedurally defaulted. *See, e.g., McCoy,* 950 F.2d at 22 ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal."). For another thing, it takes a topsy-turvy view of preemption. After all, when the Supremacy Clause is implicated, federal law trumps state law, not vice versa. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

We need go no further. The district court astutely concluded that past is prologue, and looked to *McCoy. See Williams,* 863 F.Supp. at 48. We agree that *McCoy* controls. Hence, Mass.Gen.L. ch. 149, § 29, as

---

6. USF & G also raised a second affirmative defense implicating appellants' supposed noncompliance with conditions precedent to recovery set forth in the bond. Given the posture of this appeal, we need not discuss the second affirmative defense.

7. Rule 8(c) requires parties, "[i]n pleading to a preceding pleading," to "set forth affirmatively"

various enumerated defenses, as well as "any other matter constituting an avoidance or affirmative defense." While preemption is not listed specifically in the enumeration, it is a "matter constituting an avoidance," and, thus, ordinarily comes within the ambit of the rule. *See, e.g., Kennan v. Dow Chem. Co.,* 717 F.Supp. 799, 808–09 (M.D.Fla.1989).

594

it applies to employee welfare benefit plans, is preempted by ERISA § 514(a). The trustees' suit, therefore, fails.

*Affirmed.*