287 N.J. Super. 498 (1996)
671 A.2d 596
BOARD OF TRUSTEES OF OPERATING ENGINEERS LOCAL 825 FUND SERVICE FACILITIES, PLAINTIFF-APPELLANT,
v.
FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND L.B.S. CONSTRUCTION CO., INC., DEFENDANTS. BOARD OF TRUSTEES OF OPERATING ENGINEERS LOCAL 825 FUND SERVICE FACILITIES, PLAINTIFF-APPELLANT,
v.
INTERNATIONAL FIDELITY INSURANCE COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1996.
Decided February 20, 1996.
*499 Before Judges DREIER, ARNOLD M. STEIN and CUFF.
Albert G. Kroll argued the cause for appellant Board of Trustees of Operating Engineers Local 825 Fund Service Facilities (A368-94T2) (Kroll & Gaechter, attorneys; Mr. Kroll, on the brief).
Joseph C. Glavin, Jr. argued the cause for respondent First Indemnity of America Insurance Company (Mr. Glavin and Laurie Rush-Masuret, on the brief).
James R. Zazzali, amicus curiae argued the cause for New Jersey State Carpenter Benefit Funds, Carpenters Local # 6 Benefit Funds, the Laborers Local Nos. 472 and 172 Welfare and Pension Funds, The Teamsters Local 408 Welfare and Pension Funds, and the Laborers Local Nos. 72, 156, 569 and 711 Welfare and Pension Funds (Zazzali, Zazzali, Fagella & Nowak, attorneys; *500 Mr. Zazzali and Kenneth I. Nowak, of counsel and on the brief and Edward H. O'Hare, on the brief).
N. Janine Dickey argued the cause for Board of Trustees of Operating Engineers Local 825 Fund Service Facilities (A-5077-94T5) (Ms. Dickey, on the brief).
Thomas J. Demski argued the cause for respondent International Fidelity Insurance Company (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys; Mr. Demski, of counsel, Mark E. Duckstein, of counsel and on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiff appeals from summary judgments in two cases that we consolidate for the purpose of this opinion.
The cases before us present a novel issue for the New Jersey courts: whether the preemption clauses of the Employment Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001-1461 foreclose a Law Division action to recover unpaid pension benefits through surety bonds issued under the New Jersey Public Works Bond Act, N.J.S.A. 2A:44-143 to 147.
The plaintiff in both cases is the Board of Trustees of Operating Engineers Local 825 Fund Services Facilities, a union benefits fund. The Union had negotiated collective bargaining agreements with two separate construction contractors requiring each contractor to make contributions on behalf of their union employees to various benefits funds administered by plaintiff. The contractors had been hired for various public-works projects and thus had executed the payment and performance bonds required by the Public Works Bond Act.
When each contractor failed to make all the contribution payments mandated by the collective bargaining agreement, plaintiff in separate actions sued the sureties that had provided the bonds: First Indemnity of America Insurance Company, (First Indemnity)[1] *501 and International Fidelity Insurance Company (International). The amounts unpaid were estimated at $73,624.94 and $95,612.53, respectively. In each case, the trial court granted the surety's motion for summary judgment on the ground that the suit was preempted by the ERISA clause providing that the Act supersedes all state laws that "relate to" an ERISA plan. Since ERISA provides no mechanism for recovery against a surety, the courts' rulings left plaintiff with no remedy to recover the unpaid benefits.
ERISA is a comprehensive scheme of federal regulation of employee benefit plans, 29 U.S.C.A. §§ 1001-1461; it includes civil enforcement remedies against the employer. 29 U.S.C.A. § 1132(a). In recognition of Congress's intent that qualifying benefit plans be under uniform federal control, ERISA contains three provisions governing preemption of state laws that might impinge upon this federal scheme. First, the main preemption clause provides that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C.A. § 1144(a) (emphasis added). Second, in the so-called "saving clause," the act creates an exception for certain state laws: "nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C.A. § 1144(b)(2)(A). Plaintiff argues that, even if the main preemption clause applies, plaintiff's claim is permitted under this "saving clause." We need not reach this argument as we hold that ERISA does not preempt this State action. The third provision, 29 U.S.C.A. § 1144(b)(2)(B), is not implicated in these appeals.
The New Jersey Public Works Bond Act sets forth the substantive requirements for bonding of contractors hired to perform *502 work on public projects and also prescribes the procedural mechanisms for enforcing such bonds. The necessity for a bond is created by N.J.S.A. 2A:44-143a, reading in part as follows:
a. When public buildings or other public works or improvements are about to be constructed, erected, altered or repaired under contract, at the expense of the State or any county, municipality or school district thereof, the board, officer or agent contracting on behalf of the State, county, municipality or school district, shall require the usual bond, as provided for by law, with good and sufficient sureties, with an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of such buildings, works or improvements.
[Emphasis added.]
The trial judges reasoned that the Bond Act was "related to" ERISA because, under their views, it created a new substantive cause of action against sureties which did not exist under ERISA.[2] In considering the case against First Indemnity, the judge relied on Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490, 501 (1983) for his threshold assumption that a state law need not be specifically designed to affect ERISA plans to be preempted. However, the judge's ultimate conclusion then apparently rested on two cases involving state statutes which, unlike the statute before us, specifically targeted employee benefit plans: Bricklayers Local 33 v. America's Marble Source, 950 F.2d 114, 117 (3d Cir.1991) (holding that ERISA preempted New Jersey's Fringe Benefit Act which expressly authorized actions to recover unpaid benefit contributions and thereby created substantive rights not otherwise conferred by ERISA), and Minnesota Chamber of Commerce & Industry v. Hatch, 672 F. Supp. 393, 395 (D.Minn. 1987) (Hatch) (finding preemption where statute requiring employers to post surety bonds against payment of employee health benefits sought to exercise state control over the plans' administration, an exclusively federal concern under ERISA).
*503 On the basis of these decisions, the judge concluded that a law may also be preempted if it regulates matters dealing with the administration of ERISA plans, such as disclosure, funding, reporting, vesting, and enforcement, matters that are regulated by ERISA itself. See 29 U.S.C.A. §§ 1021-1031, 1051-1061, 1081-1086, 1131-1145. In the judge's view, the New Jersey Public Works Bond Act encroached on the funding and enforcement of a plan covered by ERISA and was therefore preempted.
At the time both judges delivered their opinions on July 27, 1994 and on May 18, 1995, their conclusions appeared to be amply supported by the majority of cases considering whether ERISA preempts efforts to collect unpaid benefit contributions from a guarantor or surety or through a mechanic's lien, under state statute or common law provisions. Accord Williams v. Ashland Eng'g Co., 45 F.3d 588, 593-594 (1st Cir.) cert. denied, ___ U.S. ___, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995); Trustees of Elec. Workers Health and Welfare Trust v. Marjo Corp., 988 F.2d 865, 868 (9th Cir.1993) (Marjo); Bricklayers, supra, 950 F.2d at 118; M.C. Sturgis v. Herman Miller, Inc., 943 F.2d 1127, 1130 (9th Cir.1991); Iron Workers Mid-South Pension Fund v. Terotechnology Corp., 891 F.2d 548, 556 (5th Cir.1990); Hatch, supra, 672 F. Supp. at 398; Puget Sound Elec. Workers Health and Welfare Trust Fund v. Merit Co., 123 Wash.2d 565, 870 P.2d 960, 964 (1994) (en banc); Carpenters S. California Admin. Corp. v. El Capitan Dev. Co., 53 Cal.3d 1041, 282 Cal. Rptr. 277, 286, 811 P.2d 296, 305 cert. denied, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991) (El Capitan); Prestridge v. Shinault, 552 So.2d 643, 648 (La. Ct. App. 1989). Apparently, only one published case, not initially cited by the parties, directly rejected the preemption argument. Seaboard Sur. Co. v. Indiana State Dist. Council of Laborers and Hod Carriers Health and Welfare Fund, 645 N.E.2d 1121, 1127-28 (Ind. Ct. App. 1995) (no preemption of general state bonding statute).
Despite the apparently overwhelming weight of authority, closer examination reveals that each of the earlier cases finding preemption, *504 including Bricklayers and Hatch, was factually distinguishable from the issue at hand. Moreover, the "no preemption" finding in Seaboard, the case more directly on point, is supported by two subsequent cases from the Second Circuit, Bleiler v. Cristwood Construction, Inc., 72 F.3d 13, 16 (2d Cir.1995) and Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 576 (2d Cir.1995), and the reasoning in a subsequent, distinguishable, but factually similar decision from the Third Circuit, Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 510-513 (3d Cir.1995).
The issue of ERISA preemption of a union's state court actions to collect unpaid benefit contributions arises under a number of somewhat different factual and legal scenarios. The first group of cases consider whether state statutes that specifically target benefit plans are preempted, Williams, supra, 45 F.3d at 590 n. 3; M.C. Sturgis, supra, 943 F.2d at 1129; Iron Workers Mid-South Pension Fund, supra, 891 F.2d at 555-556 n. 7; El Capitan, supra, 282 Cal. Rptr. at 278, 811 P.2d at 297 n. 1; Prestridge, supra, 552 So.2d at 645. Without exception, the courts have found that statutes which directly refer either to "fringe benefits" or "health" or "welfare" or "pension" plans plainly "relate to" ERISA and are therefore preempted. Williams, 45 F.3d at 593-594; M.C. Sturgis, 943 F.2d at 1130; Iron Workers Mid-South Pension Fund, 891 F.2d at 556; El Capitan, 282 Cal. Rptr. at 286, 811 P.2d at 305; Prestridge, 552 So.2d at 648.
A second group of cases considers the preemption issue for state bonding statutes that specifically require the general contractor to guarantee a subcontractor's payments to its creditors. See, e.g., Marjo, supra, 988 F.2d at 866; Puget Sound supra, 870 P.2d at 961. Unlike the first category of cases, and similar to the New Jersey Bond Act, these statutes do not explicitly create obligations for benefit plans. Marjo, 988 F.2d at 866 n. 1; Puget Sound, 870 P.2d at 963. In Puget Sound, the court rejected the argument that the statutes merely provided a collection mechanism and were therefore not preempted under Mackey v. Lanier Collection Agency and Serv. Inc., 486 U.S. 825, 829, 108 S.Ct. *505 2182, 2185, 100 L.Ed.2d 836 (1988). Puget Sound, 870 P.2d at 963-64. The general contractor had never agreed to contribute to the benefit funds. Id. at 964. The court explained that the Washington statute therefore created an "entirely separate cause of action against the general contractors who otherwise have no contractual obligation to the plans" and potentially funded the plans through an additional mechanism not available under ERISA. Ibid. The court in Marjo also viewed the statutes as effectively permitting the state to "expand liability for contributions to ERISA plans as it sees fit." 988 F.2d at 868.
A third group of cases has emerged in the past year. These cases examine ERISA preemption of sureties' obligations to compensate benefit funds under the varying terms of bonds provided to construction contractors who had agreed to be directly responsible for funding ERISA plans. Earlier cases had held that sureties could not be sued in federal actions under 29 U.S.C.A. § 1132(a)(1)(B) as employers under ERISA, but did not reach the issue of preemption. See, e.g., Giardiello v. Balboa, 837 F.2d 1566, 1569-70 (11th Cir.1988); Xaros v. U.S. Fidelity and Guaranty Co., 820 F.2d 1176, 1180 (11th Cir.1987); Carpenters S. Cal. Admin. Corp. v. D & L. Camp Constr. Co., 738 F.2d 999, 1001 (9th Cir.1984), disavowed by Marjo, 988 F.2d at 867. The majority of the recent cases, however, conclude that ERISA does not preempt the surety's obligations. Bleiler v. Cristwood Contr., Inc., 72 F.3d 13, 16 (2d Cir.1995); Greenblatt, supra, 68 F.3d at 576; Ragan, supra, 62 F.3d at 513; Seaboard, supra, 645 N.E.2d at 1127-1128. But see Operating Eng'rs Pension Trust v. Insurance Co. of the West, 35 Cal. App.4th 59, 42 Cal. Rptr.2d 1, 5 (1995) (state action preempted).
The bonding obligation at issue arises in one of two ways: as a matter of private contract or as mandated by state statute. Counsel for International Fidelity suggested to the trial court that a privately contracted bond, "as a voluntary agreement not mandated by an Act of state," might not trigger the preemption provision. The federal cases, however, appear not to turn on this *506 distinction, employing similar reasoning under both scenarios: 1) the actions arose under laws which made no specific reference to benefit plans; 2) the laws were generally applicable, functioning irrespective of the existence of ERISA and only indirectly affecting a plan's assets; and 3) the claims did not conflict with ERISA enforcement mechanisms because sureties are not employers within the meaning of ERISA.
In Ragan, the Third Circuit considered the issue of preemption of a common law action to recover under a private bond contract. 62 F.3d at 511. The court explicitly distinguished its holding in Bricklayers as inapposite due to the Fringe Benefit Act's specific reference to benefit funds. Id. at 511 n. 6. The common law cause of action at issue in Ragan, on the other hand, involved a law of general application. Id. at 511. It neither referred to benefit plans, nor was it predicated on their existence. Ibid. The court observed that:
Simply because the sums collected may ultimately feed into an ERISA-governed fund does not in itself mean that the cause sued upon creates rights or restrictions....
[Id. at 512.].
The court agreed with the determinations of the Ninth and Eleventh Circuits that the definition of employer for ERISA purposes did not include a surety. Id. at 512. The court noted that while the employer may purchase the surety's services, the surety itself "does not stand in an employer relationship to the claimants, nor is it the agent of the employer." Id. at 512-513.
In Bleiler, the Second Circuit was confronted with a general state bonding statute for public works, similar to the New Jersey Bond Act. Bleiler, 72 F.3d at 16; Bleiler v. Cristwood Contracting Co., 868 F. Supp. 461, 463 n. 1 (D.Conn. 1994) (bond furnished pursuant to Conn. Gen. Stat. § 49-41). The court found its earlier reasoning in Greenblatt v. Delta Plumbing & Heating Corp., concerning a private bond contracted under New York Surety Law, to be entirely applicable to the issue. Bleiler, 72 F.3d at 16; Greenblatt, 68 F.3d at 567, 575. In Greenblatt, after noting that the state surety law made no explicit reference to ERISA plans, *507 the court examined whether the action was preempted under the standards of either Mackey, supra, or the then-recently issued New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co., ___ U.S. ___, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Greenblatt, 68 F.3d at 574-576. The court concluded that the state's surety law "does not bind the hands of the ERISA trustees or regulate them in any fashion." Ibid. Nor does it "threaten a `multiplicity of regulation'" because, at most, the provisions might affect the collectability of funds. Ibid. (quoting Blue Cross/Blue Shield, ___ U.S. at ___, 115 S.Ct. at 1677, 131 L.Ed.2d at 706). Rather, "[a] claim on a surety bond is but a `run-of-the-mill state law claim[],' similar to tort or non-plan related contract action to which ERISA plans may be a party." Id. at 574 (quoting Mackey, 486 U.S. at 833, 108 S.Ct. at 2187, 100 L.Ed.2d at 846).
The court also examined whether the action conflicted with ERISA's enforcement provisions. Id. at 575. It observed that the provisions applied only to employers, and that sureties were not employers within the scope of the definition. Ibid. The court therefore concluded that actions on the bond did not provide the kind of alternative remedy of enforcement against employers which would be prohibited by ERISA. Id. at 576.
The court in Seaboard engaged in similar analyses, but also noted that legislative history supported the conclusion that "the ERISA remedy for delinquent contributions was not intended to be exclusive." 645 N.E.2d at 1125. The court cited a House of Representative committee report on a 1980 ERISA amendment that expanded the available remedies to include a suit by a plan against an employer. Ibid. That report commented that the "amendment does not change any other type of remedy permitted under State or Federal law with respect to delinquent multiemployer plan contributions." Id. 645 N.E.2d at 1124 (citing H.R.Rep. No. 869(II), 96th Cong., 2d Sess. 48-49 (1980), reprinted in 1980 U.S.C.C.A.N. 3037-38).
The recent cases just cited demonstrate a clear change in emphasis. This change was also signaled by the United States *508 Supreme Court in Blue Cross/Blue Shield, supra, where the Court counseled reliance on the underlying purposes of 29 U.S.C.A. § 1144(a) which required preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) and not exempt under section 1003(b) of this title." The Court stated:
We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive. [___ U.S. at ___, 115 S.Ct. at 1677, 131 L.Ed.2d at 705.]
The Court found such purpose to be the avoidance of "a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at ___, 115 S.Ct. at 1677, 131 L.Ed.2d at 706. Congress never intended, however, to bar state action in fields of traditional state regulation. Id. at ___, 115 S.Ct. at 1676, 131 L.Ed.2d at 704-705.
N.J.S.A. 2A:44-143, requiring bonds from contractors and subcontractors of public works projects, was initially enacted nearly eighty years ago. ERISA did not exist and employment benefit plans themselves were in their infancy. Bonds issued under the statute provide the protected workers with a surety "for the payment ... for all labor performed." N.J.S.A. 2A:44-143(a). It is nonsensical to divide the contractor or subcontractor's responsibility to pay for labor between the portion of the employee's wages that are received in cash, are directed into a credit union, or are directed into a retirement or other employee benefit plan. The parties have provided no evidence that such an arrangement was contemplated. The contractor's requirement to make the fringe benefit payments is as much a payment for labor as is the money in the worker's pay envelope or pay check.
To follow the sureties' arguments, if two employees were owed wages, and one of the employees had directed that a portion of his wages be paid into a retirement plan, but the other had not and was to receive his wages in cash, the sureties would contend that they were responsible for the cash payment, but not the payment into the retirement fund. Thus the surety's obligation for which it *509 charged a full premium would vary depending upon the number of workers who elected to participate in the retirement fund. This would make no sense.
It is disingenuous for the sureties to suggest that the only way the Union could have protected its members' right was for it to have purchased a fringe benefit bond. This may be necessary under some private employment bonds where the contractor is not statutorily required to obtain a surety bond for payment of all labor performed, but not under the statutory bond here under consideration.[3] When the bond includes the total of the workers' wages, there is no reason to require a separate bond for a portion of the same.
The purpose of ERISA is to protect employees, not to provide loopholes through which a surety for the payment for labor performed on public work projects can avoid such payment. Such an interpretation would leave the workers without funding for the very payments that ERISA was meant to protect and that their employers had purchased bonds to insure. Such a result would be nonsensical, and, without explicit direction, we would not ascribe to Congress the intention to void existing general provisions of state law protecting the very beneficiaries of the ERISA statute.
The summary judgments from which plaintiff appeals are reversed and this matter is remanded to the trial courts for further proceedings in accordance with this opinion.
NOTES
[1] In the First Indemnity action, plaintiff also added as defendants the bankrupt construction company and two fictitious-named defendants. Plaintiff represents in its notice of appeal, however, that none of the additional entities participated in the action.
[2] The reasoning and analysis of the judge who decided the First Indemnity case was adopted with little additional comment by the judge deciding the case against International.
[3] We also note that the purchase of a specific fringe benefit bond did not inhibit the surety in Greenblatt from advancing its preemption argument.