# United States Court of Appeals
## For the First Circuit

---

No. 99-1085

MAINEGENERAL MEDICAL CENTER,

Plaintiff, Appellant,

v.

DONNA E. SHALALA, SECRETARY OF THE U.S. DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Boudin, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

William H. Stiles, with whom Skelton, Taintor & Abbott were on brief, for appellant.
Douglas Hallward-Driemeier, Attorney, U.S. Department of Justice, with whom David W. Ogden, Acting Assistant Attorney General, Jay P. McCloskey, United States Attorney, and Barbara C. Biddle, Attorney, U.S. Department of Justice, were on brief, for appellee.

---

March 8, 2000

---

**LYNCH, Circuit Judge**. This case concerns what recourse is available to a provider hospital that, although eligible to receive Medicare reimbursement for certain expenses, mistakenly fails to ask for that reimbursement in a timely manner. The Secretary of Health and Human Services reimburses hospitals and other organizations for services they provide to beneficiaries of the Medicare program, 42 U.S.C. § 1395 et seq. After the end of each fiscal year, a hospital must submit a cost report to a "fiscal intermediary," a private firm that processes claims for the Secretary. The intermediary reviews the cost report and issues a Notice of Provider Reimbursement (NPR), which indicates the reimbursement to which the provider is entitled. If a provider is dissatisfied with an NPR, it can appeal to the Provider Reimbursement Review Board (the Board). See 42 U.S.C. § 1395oo(a).

In its cost reports for 1993 and 1994, Kennebec Valley Medical Center (Kennebec), a hospital in Augusta, Maine, listed zero as its claim for bad debts reimbursable by Medicare. Reimbursable bad debts are uncollectible debts resulting from the failure of Medicare beneficiaries to pay deductible or coinsurance amounts. See 42 C.F.R. § 413.80(d). Mid-Maine Medical Center (Mid-Maine), a hospital in Waterville, Maine, similarly listed zero for reimbursable bad debts in its 1994 cost report. After the intermediary, Blue Cross and Blue Shield of Maine, issued NPRs for these three cost reports in July and September 1996, both Kennebec and Mid-Maine appealed to the Board. In their appeals, Kennebec and Mid-Maine raised several objections to the NPRs, including claims that they were entitled to reimbursement for Medicare-related bad debts despite having listed zero for them in their

-2-

cost reports. Kennebec and Mid-Maine asserted that the claims for zero reimbursement were mistakes that they had discovered only after the NPRs had been issued.

The Board dismissed the bad debts issue from all three appeals for lack of statutory jurisdiction. The Board noted that Kennebec and Mid-Maine had not included the bad debts in the cost reports they had submitted to the intermediary. Therefore, the Board reasoned, the debts were not "matter[s] covered by [a] cost report as required by 42 U.S.C. § 1395oo(a), and the Board does not have jurisdiction." Because the Secretary declined to review the Board's decision, it became a final decision of the agency. See 42 U.S.C. § 1395oo(f)(1).

I

While their appeals were pending before the Board, Kennebec and Mid-Maine merged to form MaineGeneral Medical Center (MaineGeneral). After the Board dismissed the bad debts issue from the appeals, MaineGeneral filed three suits in the United States District Court for the District of Maine. The court consolidated the cases on August 12, 1998.

Both MaineGeneral and the Secretary filed motions for summary judgment. On October 15, 1998, the Magistrate Judge issued a Recommended Decision advising that the Secretary's motion be granted. The Magistrate Judge based his recommendation on his interpretation of 42 U.S.C. § 1395oo(a). That section sets out three prerequisites for an appeal to the Board: 1) the Medicare provider must be "dissatisfied with a final determination of . . . its fiscal intermediary . . . as to

-3-

the amount of total program reimbursement due the provider"; 2) the amount in controversy must be $10,000 or more; and 3) the provider must appeal within 180 days of the intermediary's final determination. 42 U.S.C. § 1395oo(a). There was no dispute that MaineGeneral had satisfied the second and third requirements. The Magistrate Judge determined that MaineGeneral had failed to fulfill the first requirement, dissatisfaction with a final determination of the fiscal intermediary.

The Magistrate Judge's decision relied on dictum in Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399 (1988). In Bethesda, the hospitals had deliberately omitted certain costs from their cost reports, knowing that they could not claim them under the existing regulations (and that the intermediary had no authority to change the regulations). See id. at 401. The hospitals later sought to challenge the regulations and claim the costs in a hearing before the Board. See id. The Secretary contended that the Board lacked jurisdiction over the claims because the hospitals could not be "dissatisfied" as required by § 1395oo(a) if the intermediary had simply awarded the amounts the hospitals had requested in their cost reports. See id. at 404. The Supreme Court concluded, however, that the hospitals "could claim dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries." Id. at 405.

In discussing its holding, the Court observed:

> [P]etitioners stand on different ground than do
> providers who bypass a clearly prescribed
> exhaustion requirement or who fail to request

-4-

> from the intermediary reimbursement for all costs to which they are entitled under applicable rules. While such defaults might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary, those circumstances are not presented here.

Id. at 404-05. The Magistrate Judge, agreeing with the Seventh Circuit that the above language "strongly suggests that a hospital that does not ask its intermediary to reimburse it for all of the costs for which it is entitled to be reimbursed cannot, on appeal to the Board, first ask for new costs," Little Co. of Mary Hosp. & Health Care Ctrs. v. Shalala, 24 F.3d 984, 993 (7th Cir. 1994), found that MaineGeneral's claim of zero for bad debts on its cost reports meant that it could not be "dissatisfied" with the intermediary's determination of the bad debts issue. Because MaineGeneral was not "dissatisfied," it failed to meet the first requirement of Board jurisdiction under § 1395oo(a).[1] The district court issued an order adopting the Magistrate Judge's recommendation and entered judgment in favor of the Secretary on December 9, 1998. This appeal followed.

II

Under the Medicare program, fiscal intermediaries make estimated payments to hospitals and other service providers throughout the year based on each institution's projected costs. See 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.60(a), (c). Providers are required to submit

---

[1] The Magistrate Judge held alternatively that even if one agreed with MaineGeneral's contention that the Board had jurisdiction over the bad debts claims, the Board's decision to review the claims is clearly discretionary under § 1395oo(d), and it was well within its authority to refuse to hear the claims.

-5-

a cost report after the end of each fiscal year.[2] See 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.20(b). A cost report is a lengthy, complex document, sometimes three-quarters of an inch thick when completed. See Athens Community Hosp., Inc. v. Schweiker, 743 F.2d 1, 3 (D.C. Cir. 1984).

The intermediary reviews the cost report and requests further information from the provider as necessary. See 42 C.F.R. § 413.20(d)(2). A provider may file an amended cost report to correct material errors discovered after the filing of the original cost report. See Health Care Fin. Admin., Provider Reimbursement Manual, Part I § 2931.2(A) (1999). A provider may appeal to the Board an intermediary's refusal to accept an amended cost report that was submitted before the NPR was issued. See id. § 2926 app. A, ¶ B.3.

When the review of the cost report is complete, the intermediary issues an NPR, which indicates the total reimbursement for the year covered by the cost report and explains any adjustments the intermediary has made to costs claimed by the provider. See 42 C.F.R. § 405.1803. If the total reimbursement is higher than the estimated payments already made to the provider, the Secretary pays the

---

[2] When Kennebec and Mid-Maine filed their cost reports, Medicare regulations required hospitals to submit their reports within three months of the end of the fiscal year. See Redesignation of Reasonable Cost Regulations, 51 Fed. Reg. 34,790, 34,800 (1986). An intermediary could grant a one-month extension for good cause, providing the Health Care Financing Administration approved. See id. In 1995, the three-month period was extended to five months, and the granting of extensions was sharply curtailed. See Date for Filing Medicare Cost Reports, 60 Fed. Reg. 33,137, 33,138 (1995).

deficiency; otherwise, the provider refunds any overpayment to the Secretary.  See 42 C.F.R. §§ 405.1803(c), 413.60(c).

If a provider mistakenly omits something from its cost report and discovers the mistake after the NPR has been issued, it is not left without recourse.  For up to three years after the intermediary has issued an NPR, a provider can request that the intermediary reopen and revise its determination.  See 42 C.F.R. § 405.1885(a).  Whether to grant this request to reopen is a matter for the intermediary's sole discretion; it is subject to neither administrative nor judicial review.  See Your Home Visiting Nurse Servs., Inc. v. Shalala, 119 S. Ct. 930, 933-34 (1999).  MaineGeneral did not request that the intermediary reopen its NPRs; instead, it appealed to the Board.

III

In St. Luke's Hospital v. Secretary of Health and Human Services, 810 F.2d 325 (1st Cir. 1987), this court addressed the question of whether the Board has the power to decide an issue that was not first raised before the intermediary.  See id. at 326.  We held that it does, and that the power is discretionary.  See id. at 330, 332.  We are bound by the St. Luke's decision if it is on point, unless it has been subsequently overruled or other exceptional circumstances apply.  See Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).  We think that St. Luke's is on point and remains good law. We hold, therefore, in accordance with St. Luke's, that the Board has statutory jurisdiction to hear MaineGeneral's claim, but that it is not required to hear it.

St. Luke's involved a dispute between a hospital and an intermediary over whether certain sick leave expenses were reimbursable. See 810 F.2d at 327. After St. Luke's included the expenses in its 1978 cost report and the intermediary denied reimbursement, St. Luke's "self-disallowed" its 1979 sick leave expenses on its 1979 cost report. See id. "Self-disallowed" costs are entered on a worksheet in the cost report, but the provider does not request reimbursement for them, and they are generally not considered by the intermediary. See St. Luke's Hosp. v. Secretary of HHS, 632 F. Supp. 1387, 1391 (D. Mass. 1986). When St. Luke's appealed its 1979 reimbursement to the Board, the Board "evidently took the position . . . that it did not have jurisdiction to consider a self-disallowed cost, there being no 'dispute' between the fiscal intermediary and the provider." Id. The district court, analyzing § 1395oo(d) -- which it termed "[t]he statutory section governing the jurisdiction of the Board" -- held that the Board had jurisdiction to hear the appeal of the self-disallowed costs. Id. at 1392-94. The Secretary appealed this determination, and this court held that the Board had the legal power to decide matters not raised below. See St. Luke's, 810 F.2d at 330.

In this circuit, panels "are, for the most part, bound by prior panel decisions closely on point." Williams, 45 F.3d at 592. There are two exceptions to this rule. The first is that "[a]n existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling." Id.

The second exception covers "those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind."  Id.

First, we must determine whether St. Luke's is closely on point.  The Magistrate Judge's opinion in this case, which was adopted by the district court, distinguished St. Luke's on the ground that in St. Luke's, the hospital's failure to ask for reimbursement of certain expenses in its cost report was intentional rather than inadvertent. Nothing in the St. Luke's opinion suggests that such a distinction played a significant role in the court's interpretation of the Board's statutory jurisdiction.  See 810 F.2d at 327-29.  Indeed, the only point at which the St. Luke's court attaches any weight to the fact that the hospital self-disallowed the costs at issue is at the very end of the opinion, in its discussion of whether the Board should be required to hear the hospital's claim. See id. at 332 (observing that St. Luke's has "a strong equitable argument" based on self-disallowance, but holding nonetheless that the Board has discretion over whether it will hear an appeal).

Furthermore, the St. Luke's opinion does not distinguish cases involving inadvertently omitted costs.  The St. Luke's court phrased its holding this way:

> The question before us is whether this statute grants the Board the power to order reimbursement for costs identified in the cost report, but as to which the hospital did not specifically ask the intermediary for

> reimbursement. Put more broadly, the question is
> whether the statute gives the Board the power to
> decide a new issue raised for the first time
> before it. We believe that the statute does give
> the Board this power. We also believe, however,
> that the Board need not exercise that power. . .
> . . Because the District of Columbia Circuit has
> taken a contrary view of the matter, Athens
> Community Hospital v. Schweiker, 743 F.2d 1 (D.C.
> Cir. 1984) (Athens II) . . ., we shall explain
> our reasoning in some detail.

Id. at 326 (some citations omitted). In Athens II, the D.C. Circuit held that the Board had no jurisdiction over costs for which a provider inadvertently failed to request reimbursement. See 743 F.2d at 10 & n.17. If the distinction between "self-disallowed" costs and "mistakenly omitted" costs had been significant, the St. Luke's court could have simply distinguished Athens II on that basis. Instead, the court spent two pages explaining why it was unconvinced by the reasoning of Athens II. See St. Luke's, 810 F.2d at 329-30. In light of this, we regard the holding of St. Luke's as applicable to "matters not raised" before the intermediary, id. at 330, whether the failure to raise the matter was deliberate or inadvertent.[3]

A second possible ground for distinguishing St. Luke's here would be that St. Luke's concerned only subsection § 1395oo(d), while this case (like Bethesda) turns on the interpretation of § 1395oo(a).[4] We believe that an examination of St. Luke's and Bethesda refutes this

---

[3]    We note that the Ninth Circuit has interpreted the holding of St. Luke's the same way. See Adams House Health Care v. Bowen, 862 F.2d 1371, 1375 n.3 (9th Cir. 1988).

[4]    Neither the Magistrate Judge's opinion nor the Secretary's brief in this case attempted to distinguish St. Luke's on this ground.

argument.  First, the holding of St. Luke's is that "the Board has the legal power to decide matters not raised below."  See 810 F.2d at 330. This holding is not a narrow one based on a parsing of § 1395oo(d) alone: it relies on legislative history, see id. at 328; the nature of judicial and administrative appellate bodies, see id. at 328-29; other subsections of § 1395oo, see id. at 329 (§ 1395oo(f)); and the special features of Board review, see id.  To confine St. Luke's to § 1395oo(d) alone would be to ignore its language and the analytic rationale for its conclusion about the Board's jurisdiction.

Furthermore, Bethesda makes nothing of the possible distinction between "subsection (a)" and "subsection (d)" cases. Bethesda, which could be characterized as a subsection (a) case, states that it is "resolv[ing] a conflict among the Courts of Appeals," and lists eight circuit opinions, the majority of which could be classified as subsection (d) cases.  See 485 U.S. at 402-03 & n.1; St. Luke's, 810 F.2d at 327 (noting the Secretary's argument that "§ 1395oo(d) denies the Board the power to decide any issues not first raised before the intermediary"); North Broward Hosp. Dist. v. Bowen, 808 F.2d 1405, 1409 (11th Cir. 1987) (defining "the scope of jurisdiction conferred by § 1395oo(d)"); Community Hosp. v. HHS, 770 F.2d 1257, 1262 (4th Cir. 1985) (same); Athens II, 743 F.2d at 3 ("The [Board's] jurisdiction -- the crux of the dispute here -- is set out in section 1395oo(d) . . . ."); Saint Mary of Nazareth Hosp. Ctr. v. Department of HHS, 698 F.2d 1337, 1346 (7th Cir. 1983) (rejecting the Secretary's § 1395oo(d) jurisdictional argument); see also Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen, 815 F.2d 1435, 1458-59 (11th Cir. 1987) (finding subsection (f)

more relevant, even though the district courts and parties focused on subsection (d)). If the possible distinction between subsection (a) and subsection (d) cases mattered to the Bethesda Court, it would not have announced that it was resolving a circuit split involving subsection (d) cases in an opinion focused on subsection (a).

A much more plausible interpretation of Bethesda and the court of appeals cases that it cites (including the St. Luke's opinion) is that they actually deal with the question of the Board's jurisdiction under § 1395oo as a whole. For example, the Bethesda Court found its understanding of the express language of subsection (a) "supported by the language and design of the statute as a whole," 485 U.S. at 405, especially subsection (d), id. at 405-07. Athens II read subsection (d) in light of the overall statutory scheme, particularly subsection (a). See 743 F.2d at 6; see also Adams House Health Care v. Heckler, 817 F.2d 587, 591 (9th Cir. 1987) ("The D.C. Circuit [in Athens II] correctly held that subsections (a) and (d) must be read together."). And St. Luke's confirmed its interpretation of the Board's powers under subsection (d) by referring to subsection (f). See 810 F.2d at 329.

The interrelationship between the subsections of § 1395oo can also be seen in the original reasoning the Board offered for its dismissal of the bad debts issues here. In its letters informing Kennebec and Mid-Maine of its dismissal of the bad debts issues from

-12-

their appeals, the Board stated that it lacked jurisdiction over the debts because they were not "matter[s] covered by [a] cost report as required by 42 U.S.C. § 1395oo(a)." The only reference to "matters covered by [a] cost report" in § 1395oo, however, is in subsection (d), not (a). 42 U.S.C. § 1395oo(a), (d).

In Bethesda, the Supreme Court defined a matter "covered by [a] cost report" as "a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." 485 U.S. at 406 (internal quotation marks omitted). Under this definition, the bad debts were clearly a matter covered by a cost report, contrary to the Board's assertion.

Having concluded that St. Luke's is on point, we still must consider whether the exceptions to stare decisis detailed in Williams apply. The first exception is not applicable here. The Supreme Court's suggestion in Bethesda that a provider's failure to request reimbursement from the intermediary for all costs to which it was entitled "might well establish that a provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary," 485 U.S. at 405, is explicitly dictum -- "those circumstances are not presented here," id. Nor has St. Luke's been subsequently overruled by statute or First Circuit en banc opinion.

The second "relatively rare" exception to stare decisis would apply if we believed that subsequent non-controlling authority -- specifically the Bethesda dictum -- would have altered the holding of St. Luke's. We do not think that is the case. As noted above, the St.

-13-

<u>Luke's</u> holding rested on a number of grounds: the plain language of the statute, its legislative history, the nature of appellate bodies in general, and the specific features of Board review.  <u>See</u> 810 F.2d at 327-29.

As the <u>St. Luke's</u> court noted, § 1395oo(d) specifically states that the Board has the power "to make . . . other revisions on matters covered by [the] cost report . . . even though such matters were not considered by the intermediary . . . ."  <u>Id.</u> at 327 (quoting § 1395oo(d)) (alteration and omissions in original) (internal quotation marks omitted).  The <u>St. Luke's</u> court held that § 1395oo(d) is not ambiguous, and therefore no deference is due the Secretary's view of the statute under <u>Chevron</u>.  <u>See</u> <u>id.</u> at 331 (citing <u>Chevron U.S.A. Inc.</u> v. <u>Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984)).  The <u>St. Luke's</u> court also found confirmation of its reading in the statute's legislative history, which, inter alia, describes the provision in question as permitting the Board to make "<u>revisions involving matters not considered by the intermediary</u>."  <u>Id.</u> at 328 (quoting H.R. Rep. No. 92-231, <u>reprinted in</u> 1972 U.S.C.C.A.N. 4989, 5309).

The practices of both judicial and administrative appellate bodies provide further support.  Even courts or agency bodies with purely appellate functions have, as a rule, the power to review matters not raised below, though they may choose to exercise such power sparingly.  <u>See</u> <u>id.</u> (citing cases); <u>see also</u> <u>Singleton</u> v. <u>Wulff</u>, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the

-14-

discretion of the courts of appeals . . . ."); <u>Portela-Gonzalez</u> v. <u>Secretary of the Navy</u>, 109 F.3d 74, 77 (1st Cir. 1997) (discussing the rule of exhaustion of administrative remedies and its exceptions); <u>United States</u> v. <u>Mercedes-Amparo</u>, 980 F.2d 17, 18 (1st Cir. 1992) ("An appellate court . . . has the discretionary power, in an exceptional case, to resolve an issue not passed on below.")  The special features of Board review here suggest that its reviewing powers are even broader than those of the typical reviewing body.  <u>See</u> <u>St. Luke's</u>, 810 F.2d at 329.  "[T]he Board's procedure is a kind of 'hybrid,' exhibiting some features of initial factfinding (witnesses, cross-examination, new evidence) and some features of review."  <u>Id.</u> at 328.

Finally, we do not believe that the <u>Bethesda</u> opinion, taken as a whole, undermines the holding of <u>St. Luke's</u>.  The Secretary's position that § 1395oo(a) incorporates an unwaivable and unyielding exhaustion requirement is essentially the same reading that the Court rejected in <u>Bethesda</u> as a "strained interpretation . . . inconsistent with the express language of the statute."  485 U.S. at 404.  The <u>Bethesda</u> court also described the requirement in § 1395oo(d) that a matter have been "covered by such cost report" as the "only limitation" on the Board's power to review matters not contested before the intermediary, and defined a matter "covered by such cost report" as "a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed."  <u>Id.</u> at 406.

Although the dictum cited in the Magistrate Judge's opinion suggests that providers who mistakenly omit claims from

-15-

their cost reports may not be able to claim dissatisfaction under § 1395oo(a)(1)(A)(i), we cannot say that the <u>Bethesda</u> opinion in its entirety would have altered the holding of <u>St. Luke's</u>. Notably, the <u>Bethesda</u> dictum that we have quoted above (to the effect that a failure to request reimbursement "might well establish that a provider was satisfied with the amounts . . . awarded by the fiscal intermediary," 485 U.S. at 405) could easily be taken to mean that this would be a reasonable factual inference in many cases; the opinion does not say expressly that this inference would be a binding rule of law. We therefore reiterate the holding of <u>St. Luke's</u>: the Board has statutory jurisdiction to hear claims not first raised before the intermediary, but it may decline to do so as a matter of discretion.

IV

The dissent by our respected colleague makes reasoned and reasonable arguments, but we view the issues differently and respond briefly. The dissent says that this case is different than <u>St. Luke's</u> because here the hospital did not list the items in its cost report and that is the key fact. A cost report includes both reimburseable and non-reimburseable costs. <u>See</u> <u>St. Luke's</u>, 810 F.2d at 326. That a cost is listed in a cost report says nothing about whether the provider is "dissatisfied" with the later decision by the intermediary to reimburse or not reimburse costs. That is established by <u>Bethesda</u>, 485 U.S. at 1258-59. In fact, the intermediary does

-16-

not usually even consider matters on the cost report for which no reimbursement is sought. See St. Luke's, 632 F. Supp. at 1391. The key question is whether the hospital sought reimbursement for the cost. In St. Luke's, the hospital did not, and this court held that fact did not mean the Board lacked statutory jurisdiction. See St. Luke's, 810 F.2d at 327, 331-32. Contrary to the implications of the dissent's position, nothing in St. Luke's suggests that the hospital would not have been "dissatisfied" if it omitted to list the cost on a worksheet in the cost report (whether through inadvertence, or in reliance on the agency's earlier determination that the costs were not recoverable). In fact, St. Luke's expressly disagreed with Athens II, a case in which the provider had apparently inadvertently failed to list certain stock option costs in its cost report, and the D.C. Circuit had concluded there was no Board jurisdiction. See id. at 329-30; Athens II, 743 F.2d at 10 & n.17. Under St. Luke's, the statutory word "dissatisfied" is not limited to situations in which reimbursement was sought by the hospital from the intermediary.

St. Luke's also found Chevron abdication to the views of the agency inappropriate on the matter, and we are so bound. See St. Luke's, 810 F.2d at 331-32. We also note that the Board itself in this case did not clearly distinguish between its powers under § 1395oo(a) and (d), as the dissent attempts to do, either in its handling of this matter, or in its briefs. As we have said, the very decision of the Board under review conflates

-17-

the two sections, and so is at best an inconsistent statement of agency position, entitled to less deference. See INS v. Cardoza-Fonseca, 480 U.S. 421, 446-48 & n.30 (1987); Goncalves v. Reno, 144 F.3d 110, 127 (1st Cir. 1998).

Finally, we agree with the dissent that it would be entirely permissible for the Board to conclude, as a matter of policy, not to hear this claim. On remand, the Board may well reach this outcome. All we hold is that Congress did not, in the statute, require the Board to reach this result by stripping it of jurisdiction. This outcome preserves some flexibility for the agency, which may be exactly what Congress intended. It is not our job to exercise that flexibility for the agency.

V

Courts are generally not permitted to affirm agency action on grounds implicating the agency's policy judgments or discretion other than those advanced by the agency whose actions are under review. See SEC v. Chenery Corp., 318 U.S. 80, 88 (1943). There is an exception to this rule where it is clear what an agency's decision must be, see Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, 756 n.7 (1986), but that exception does not apply here.

The Board decided that it would not hear MaineGeneral's bad debts claims because it believed it lacked statutory jurisdiction over them. In essence the Board held it could not hear the claims even if it wanted to because § 1395oo precluded jurisdiction. This reasoning was incorrect. The Board must now

-18-

decide again whether it will hear these claims mistakenly omitted from MaineGeneral's cost reports, but as a matter of discretion, not statutory jurisdiction. Congress specifically granted the Board "full power and authority" to make rules "necessary or appropriate" to carry out its statutory tasks. 42 U.S.C. § 1395oo(e). As the St. Luke's court noted, this gives the Board "the power to limit by rule the extent to which it will hear an issue not raised [before the intermediary]; it can also do so on a case-by-case basis." 810 F.2d at 332.

The choice is up to the Board. It can adopt a policy of hearing such claims or of refusing to hear them, or it can opt to decide on a case-by-case basis. In light of the statutory scheme here, a rule of consistently refusing to hear inadvertently omitted claims would be rational, given the ability of providers to request the intermediary to reopen an NPR up to three years after it has been issued.[5]

"All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it." St. Luke's, 810 F.2d at 333 (quoting Chenery, 318 U.S. at 94-95) (internal quotation marks omitted). The decision of the district court is vacated and the case remanded

---

[5]    At oral argument, counsel for MaineGeneral stated that MaineGeneral had not requested that the intermediary reopen the three cost reports in question because such requests seeking additional reimbursement are seldom, if ever, granted in Maine. The Secretary has recently reported, however, that intermediaries nationwide grant 30 to 40 percent of requests to reopen. See Your Home Visiting Nurse Servs., 119 S. Ct. at 935.

to the Provider Reimbursement Review Board for further proceedings consistent with this opinion.


- <u>Dissent Follows</u> -

**CYR, Senior Circuit Judge (dissenting).** The three rationales for the panel opinion are (i) St. Luke's constitutes controlling First Circuit precedent, (ii) Bethesda is mere dicta, and (iii) no Chevron deference is due the Secretary's interpretation of the term "dissatisfied," see 42 U.S.C. § 1395oo(a). As each rationale is seriously flawed, I respectfully dissent.

First, the panel opinion interprets St. Luke's too expansively, as asserting that the Board may review any cost item, whether or not mentioned in the cost report submitted by the healthcare provider. Moreover, its interpretation undermines the important maxim that judicial precedents must not be extrapolated beyond their respective factual contexts. See Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995) (noting that new panels are only "bound by prior panel decisions closely on point") (emphasis added).

The healthcare provider in St. Luke's plainly understood that HHS regulations precluded any reimbursement for its 1979 sick leave benefits. Consequently, it listed the sick leave benefits in its cost report as "self-disallowed." At that point, the Board declined to exercise jurisdiction over the claim, and the healthcare provider appealed to the district court. See St. Luke's Hosp. v. Secretary of Health and Human Servs., 632 F. Supp. 1387, 1389-91 (D. Mass. 1986).

Reversing the Board decision, the district court identified subsection 1395oo(d) as the sole provision "governing" the Board's jurisdiction. Id. at 1392. Subsection (d) explicitly states that the Board "shall have the power to affirm, modify or reverse a final determination of the fiscal intermediary with respect to a cost report,

-21-

and to make any other revisions on matters <u>covered</u> <u>by</u> <u>such</u> <u>cost</u> <u>report</u> . . . even though such matters were not considered by the intermediary in making such final determination."  <u>See</u> <u>id.</u> (emphasis added).

The district court then identified two reasons for ruling that the Board possessed jurisdiction over "self-disallowed" costs. First, it noted that subsection (<u>d</u>) plainly contemplates that some "matters covered by [a] cost report" are not "considered by the fiscal intermediary," and that self-disallowed costs fit into that category because they are mentioned in the cost report but not "considered" when the intermediary calculates the healthcare provider's total reimbursement. <u>Id.</u> at 1393.  Second, the district court pointed to the special administrative problem associated with self-disallowed costs, in that the only way a healthcare provider can preserve its objection to a current HHS regulation barring reimbursement for particular costs is to list those costs as nonreimbursable in its cost report until such time as the HHS regulation may be amended.  <u>Id.</u>

After the Secretary appealed the district court decision, this court pointedly framed the question before it no less narrowly than the district court:  "The question before us is whether this statute grants the Board the power to order reimbursement for costs <u>identified</u> <u>in</u> <u>the</u> <u>cost</u> <u>report</u>, but as to which the hospital <u>did</u> <u>not</u> <u>specifically</u> <u>ask</u> <u>the</u> <u>intermediary</u> <u>for</u> <u>reimbursement</u>." <u>St. Luke's Hosp.</u> v. <u>Secretary of Health and Human Servs.</u>, 810 F.2d 325, 326 (1st Cir. 1987) (Breyer, J.) (emphasis added).  As a further precaution, this court noted once again:

> The precise question before us is whether the Secretary's legal view of the relevant statute is correct. Does the Board lack the legal power to consider the hospital's 1979 sick leave claim, a claim (1) in respect to a cost item <u>mentioned</u> in the cost report, (2) which cost report was properly before the Board on review, but (3) which claim was not specifically raised before the intermediary?

<u>Id.</u> at 327 (emphasis added).

Like the district court, in <u>St. Luke's</u> we focused exclusively upon subsection 1395oo(<u>d</u>). <u>See</u> <u>id.</u> ("The Secretary of HHS now appeals only this last determination, arguing that 42 U.S.C. § 1395oo(<u>d</u>) denies the Board the power to decide any issues not first raised before the intermediary.") (emphasis added). Thus, we addressed neither subsection 1395oo(<u>a</u>) nor its "dissatisfaction" criterion, which is a <u>threshold</u> jurisdictional provision. <u>See</u> <u>Bethesda Hosp. Ass'n</u> v. <u>Bowen</u>, 485 U.S. 399, 405 (1988) ("Section 1395oo(<u>d</u>) . . . sets forth the powers and duties of the Board <u>once its jurisdiction has been invoked</u> . . . <u>pursuant to subsection (a)</u> . . . .") (emphasis added).

The Secretary never asserted the alternative argument -- that the healthcare provider in <u>St. Luke's</u> had failed to meet the "dissatisfaction" requirement -- since the healthcare provider's cost report, unlike MaineGeneral's in the present case, plausibly could not have supported such an argument. <u>See</u> <u>infra</u> note 2. In listing the disputed claim for sick-leave-benefits reimbursement on Worksheet A-8 of its 1979 cost report, St. Luke's in no sense indicated its satisfaction with the Notice of Provider Reimbursement (NPR), but simply acknowledged that then-current HHS regulations granted neither the intermediary nor the Board the power to reimburse for such costs.

-23-

Moreover, normally one would expect that healthcare providers indeed would be dissatisfied with HHS regulations which _require_ them to list their costs as nonreimbursable. In stark contrast, however, where the _healthcare_ _provider_ _itself_ _omits_ _a_ _reimbursable_ _cost_ _item_ from its report it is not _unreasonable_ for the Secretary to presume that the healthcare provider is not "dissatisfied," especially since the healthcare provider _has_ _already_ _been_ _reimbursed_ _by_ _the_ _intermediary_ _for_ _all_ _amounts_ _requested_.[1]

For these reasons, I am unable to agree that St. Luke's either controls our decision or precludes Chevron deference to the Secretary's reasonable interpretation that the term "dissatisfied" does not apply to a healthcare provider which omits a cost claim from its report through its own inadvertence.[2] Surely, it is not _unreasonable_

_____

[1]    The panel opinion suggests that St. Luke's specifically declined to acknowledge a jurisdictional distinction between self-disallowed and omitted costs when it expressly disagreed with the holding in Athens Community Hospital, Inc. v. Schweiker, 743 F.2d 1 (D.C. Cir. 1984). The Athens citation does not bear out the majority's point, however. In St. Luke's, we found it necessary to reject Athens simply because it ruled, arguendo, that the Board would have no jurisdiction over both omitted and self-disallowed costs. See id. at 4-6 (holding that Board has jurisdiction to consider only costs specifically claimed as reimburseable in cost report); id. at 10 ("At best, HCA's claim with respect to the [omitted] income tax costs can be characterized as a 'self-disallowance.'"). Thus, St. Luke's took no position on the discrete jurisdictional issue presently before us.

[2]    In the case at bar, the panel majority mistakenly concludes that the contention -- that St. Luke's is not binding precedent because it construed subsection 1395oo(d) only, and not subsection 1395oo(a) -- has been waived by the Secretary.
    The Secretary distinguished St. Luke's in the very same section of the appellate brief in which she repeatedly focused on MaineGeneral's failure to meet the § 1395oo(a)

-24-

for the Secretary to regard a healthcare provider which has omitted an item from its cost report as somewhat less deserving of agency sympathy than one which, in good faith, challenges Medicare regulations (<u>viz.</u>, a provider which "self-disallows"), and otherwise would be <u>deprived</u> <u>of</u> <u>a</u> <u>forum</u> <u>in</u> <u>which</u> <u>to</u> <u>air</u> <u>its</u> <u>dispute</u> <u>should</u> <u>the</u> <u>Board</u> <u>disclaim</u> <u>jurisdiction</u> <u>to</u> <u>review</u> "<u>self-disallowed</u>" <u>costs</u>.

Furthermore, and no less significantly, at the very least the interpretation proposed by the Secretary in the instant case arguably fosters important administrative policies: (i) affording healthcare providers an incentive to prepare their cost reports with care and (ii) maximizing their use of the intermediary's expertise in cost assessment, as well as their utilization of the intermediary's

---

"dissatisfaction" criterion. Then, in a footnote, the Secretary carefully distinguished the facts in <u>Bethesda</u> and <u>St. Luke's</u> from those in the case at bar. Later, the Secretary stated: "[s]ection 1395oo(d) cannot be used to 'bootstrap' an appeal that is otherwise deficient under § 1395(a)," then reiterated her interpretation of the holding in <u>St. Luke's</u>: "Because the intermediary had, by an earlier determination, prevented the provider from requesting reimbursement in its cost report, <u>St. Luke's</u>, 810 F.2d at 327, the provider satisfied the 'dissatisfaction' requirement of paragraph (a)." <u>See</u> <u>also</u> Magistrate's Opinion, at p. 7 n.5 ("In essence, like <u>Bethesda</u>, the provider in <u>St. Luke's</u> omitted the costs on the report not through mere neglect, but because it intended to challenge an administrative decision.").

Finally, even if it were possible to find a waiver in these circumstances, the panel majority overlooks the fact that the Secretary is an appellee, not an appellant. Normally, of course, we affirm trial courts on any ground apparent from the record in these circumstances. <u>See</u> <u>Plymouth Svgs. Bank</u> v. <u>United States Internal Revenue Serv.</u>, 187 F.3d 203, 209 (1st Cir. 1999).

investigatory resources. See St. Luke's Hosp., 810 F.2d at 331 (noting that Chevron deference normally is appropriate where "the question [of statutory construction] is interstitial, involves the everyday administration of the statute, implicates no special judicial expertise, and is unlikely to affect broad areas of the law") (emphasis added). Thus, the Secretary's interpretation plainly falls well within the broad universe of plausible interpretations which may be given the term "dissatisfied," especially since Congress has afforded hospitals an alternative mechanism for addressing these errors (i.e., reopening the NPR), see 42 C.F.R. § 405.1885(a), a mechanism MaineGeneral has yet to utilize.

Finally, further support for the reasonableness of the Secretary's interpretation in this case may be found in Bethesda, where Mr. Justice Kennedy specifically distinguished healthcare providers who "self-disallow" from those "who fail to request from the intermediary reimbursement for all costs to which they are entitled under the rules." See Bethesda Hosp. Ass'n, 485 U.S. at 404. Ironically, the quoted observation is dictum simply because, like St. Luke's, Bethesda did not involve a healthcare provider which inadvertently omitted costs. The quoted obiter dictum by the Supreme Court thus serves the Secretary well in the instant case, since it would seem -- at the very least -- to make it inarguable that reasonable minds might determine to treat these two categories of healthcare providers differently for jurisdictional purposes.

For the foregoing reasons, <u>Chevron</u> plainly dictates deference to the Secretary's reasonable interpretation of the ambiguous statutory term "dissatisfied."  Accordingly, I respectfully dissent.