CARTER, Senior District Judge,
dissenting.
The majority opinion in this case represents a startling anomaly in the established jurisprudence of American compensatory justice — it holds that Plaintiffs may recover damages where it is established without question and as a matter of lato that no action of the Defendants proximately caused the damages for which recovery is allowed. The majority founds the result upon an attempted distinction of the case of Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and its own views of correct “policy” in the application of a holding of the United States Supreme Court. See maj. op. at 101 -102.
I believe that a proper analysis in this case should look to the posture in which the case was submitted to the jury. Thereafter, the application of the clearly articulated holding of the United States Supreme Court in Mt. Healthy yields the proper result. There should be neither *104 occasion nor need to create a circuit “policy” to abrogate the rule of Mt. Healthy. Law, not local “policy,” should control the result in this case. Hence, the cause for my dissent.
The majority opinion correctly describes the conduct of Alvarez and Morales. However, the record clearly shows that the conduct of these underlings, even if improperly motivated, never came to the knowledge or attention of Secretary Fuentes, who is the official who made and executed the decision to discharge the Plaintiff. It is undisputed that Fuentes was the “final decision-maker.” The majority opinion specifically recognizes that:
Gierbolini [the incoming acting director] recommended to the newly appointed Secretary of Justice, Jose Fuentes Agos-tini, that Tejada be discharged for the 1993 domestic violence conviction on the ground that someone with this record should not be a police agent.
Maj. op. at 99 (emphasis added).
Fuentes executed Plaintiffs discharge papers about three weeks later. There is not a scintilla of evidence in this record, nor do I understand the majority to make any assertion to the contrary, that Fuentes ever had communicated to him or that he discovered by any other means any other reason to discharge the Plaintiff than the one he gave (e.g., Plaintiffs prior domestic violence conviction). The majority states that the hearing officer who reviewed Fuentes’ discharge action
recommended discharge because the conduct leading to Tejada’s conviction represented, in violation of the Bureau’s regulations, “improper behavior or [behavior] damaging to the good name of the agency or the Government of Puerto Rico” and “commission of acts for which it is charged or may be charged a felony or misdemeanor crime.”
Id. at 99 -100 (emphasis added). There is no evidence that the hearing officer had any knowledge of any basis for discharge of Plaintiff other than the referenced conviction.
The district court found at trial that it was Secretary Fuentes who made the ultimate decision to terminate Mr. Tejada and that Fuentes’ decision was based solely on Tejada’s conviction for domestic violence.[4] When the district court granted Judgment as a Matter of Law, before submission of the case to the jury, in favor of Secretary Fuentes, it stated, as the basis for its ruling:
I’m dismissing the case as to the former Secretary of Justice. I find that there is no legally sufficient evidentiary basis from which a reasonable jury can determine that the motivating factor between the dismissal letter, his action, and plaintiffs actions, that there was a motivating factor in freedom of speech, in violation of his freedom of speech, and I find that there is a very valid nondiscriminatory reason and that’s what the evidence points to.
Appendix Volume I, Trial Transcript at 276-77. The district court reaffirmed its factual findings and legal conclusions based on those findings in a post-trial Opinion and Order:
*105 The evidence also demonstrated that Fuentes Agostini signed plaintiffs termination letter on February 27, 1997, adopting the recommendation of Miguel Gierbolini that plaintiff be discharged for his domestic violence conviction. Nothing in ■plaintiff’s evidence established that Fuentes Agostini’s motivation for signing the termination letter was in any way related to the publication of the newspaper articles or plaintiff’s denouncement of corruption. The evidence similarly fell short of establishing Fuentes Agostini’s knowledge of plaintiffs protected expressions. Plaintiff nevertheless contends that a reasonable inference can be drawn from the evidence presented. He suggests that from the scanty evidence described above, a reasonable inference can be made that co-defendant Fuentes Agosti-ni knew of the newspaper articles and was motivated by them. He further claims that it is reasonable to expect that a newly appointed Secretary of Justice will be informed of all the media publications that relate to the Department of Justice, and that when he signed the termination letter he must have been presented with plaintiffs file in which the memoranda containing plaintiffs expressions were addressed. All of these, plaintiff contends, creates a reasonable inference that Fuentes Agos-tini was motivated by the plaintiffs exercise of First Amendment rights at the time he signed the termination letter. I disagree.

In this case plaintiff’s evidence of Fuentes Agostini’s motivation is nothing but conjecture and guesswork.

There is simply nothing in the evidence proffered by plaintiff to affirmatively link co-defendant Fuentes Agostini to any intentional deprivation of constitutional rights. All the evidence established is that he signed the termination letter adopting the recommendation that plaintiff had violated internal regulations and that his domestic abuse conviction mandated dismissal. Plaintiff has failed to “introduce! ] at trial sufficiently adequate evidence for the jury to determine the plausibility of’ co-defendant’s [Fuentes’] motivations in order to survive a motion under rule 50.
Tejada-Batista v. Fuentes Agostini, 251 F.Supp.2d 1048, 1053-54 (D.P.R.2003) (emphasis added).[5]
Hence, the conduct and motivation of Ms. Morales and Mr. Alverez cannot be, as a matter of law, any part of a legally sufficient causative factor in Secretary Fuentes’ employment action. Even though the evidence might be construed to establish that their termination recommendations were potentially driven by some unconstitutional motivation, they cannot be liable under section 1983 without some evidence of causation between that motivation and the decision by Secretary Fuentes to discharge the Plaintiff. See Beattie v. Madison County Sch. Dist., 254 F.3d 595, 605 (5th Cir.2001); see also Johnson v. state, 369 F.3d 826, 830 (5th Cir.2004) (“[I]f the decision-maker who imposed the adverse employment action was not motivated by the speech, then the speech did not cause the adverse employment action.”).
Here, as found by the district court, there is no evidence that the final decision-maker, Secretary Fuentes, even knew of Mr. Tejada’s protected conduct. Indeed, *106 the district court specifically found that Secretary Fuentes made his own independent decision to terminate Mr. Tejada based on Tejada’s prior domestic violence conviction and that there was no evidence upon which to impute any of Ms. Morales’ and Mr. Alverez’s motives to Secretary Fuentes. Without at least being able to impute appellants’ unlawful motives to Secretary Fuentes, those wrongful motives cannot be found to be a motivating factor in the adverse employment action.
Hence, the conduct of the minions, Morales and Alvarez, that the majority imagines to be the “but for” cause of Plaintiffs discharge never, as a matter of law, had any legally cognizable influence or impact of any kind in bringing about the decision by Fuentes, as affirmed by the reviewing hearing officer, to discharge the Plaintiff. Any conclusion, even any inference, to the contrary is manifestly in conflict with the district court’s conclusion at trial as a matter of law that Fuentes, the final decision-maker, acted without any improper knowledge or motivation. As a matter of law, there simply cannot be any causal link here between any supposed improper motives of the minions and the discharge implemented by Secretary Fuentes’ solitary decision to discharge plaintiff for a proper, stated reason.
It is precisely the purpose and role of the holding in Mt. Healthy to cut off such noncontributory conduct from serving as an efficient causal link to support recovery of damages where the Defendant puts forth a legitimate reason for the discharge. The United States Supreme Court had its own “policy” basis for casting that holding out into the world of legal precedent; it stated that policy to be its response to fairness considerations that may arise in the course of truly mixed motive cases. I believe that it is wrong for the majority to casually shunt aside a clearly applicable holding of the Supreme Court in reliance on its own previously unrecognized “policy” [6] of aversion to rigid rules of burden-of-proof allocation.
In the Mt. Healthy case, the challenged employment action in question consisted of facts that the superintendent of the Defendant school system recommended to the School Board at year-end that the Plaintiff, along with nine other teachers, not be rehired and the action of the School Board in accepting that recommendation. The Court expressly established “a rule of causation,” 429 U.S. at 285, 97 S.Ct. 568, that did not focus solely on whether the protected conduct “played a part, ‘substantial’ or otherwise, in a decision not to rehire .... ” Id. It found such a rule would unfairly unbalance the framework of permitted decision-making. The evil addressed by the holding was stated to be that:
A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.
*107 Id. at 286, 97 S.Ct. 568. The Court went on to state:
[I]n other areas of constitutional law, this Court has found it necessary to formulate a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused. We think those are instructive in formulating the test to be applied here.

Id.

After reviewing a compendium of cases that it found to be instructive, the Court found:
that the proper test to apply in the present context is one ... which protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to assure those rights.
Id. at 287, 97 S.Ct. 568. Accordingly, it held that the appropriate analytical inquiry, in terms of causation, should go beyond the question of whether constitutionally protected conduct was a “motivating factor” and that a determination should be made as to whether the Defendant would have taken the same employment action “even in the absence of the protected conduct.” Id. The failure of the court below to reach that second question was found to require reversal in Mt. Healthy. In the present case the court below did reach that second question and did resolve it, but in a way that the Mt. Healthy holding clearly contemplates requires that these Defendants be “insulated from liability.”[7]
This result has very recently been recognized as the correct application of the holding of Mt. Healthy by another panel of this Court in the case of Webber v. International Paper Co., 417 F.3d 229 (1st Cir.2005). There, the question was whether the motivations of the Plaintiffs immediate supervisors, Schaub and Moser, could be taken to be adequate circumstantial evidence that the final decision-maker, Oe-tinger, who testified that Schaub and Mos-er neither participated in nor contributed to the decision, acted from an improper motivation in taking the adverse employment action in question. The Court there stated, “[t]he pivotal question thus becomes: whether the jury could rationally infer from these record facts that Moser [the underling] conceivably ‘influenced’ the decision to fire [the plaintiff].” Id. at 237. Concluding that the evidence would not *108 support such an inference, the panel found that Plaintiff, “failed to meet his burden of proof to show that the proximate cause of his termination was [defendant employer’s] discriminatory animus.” Id. at 240 (emphasis added). Thus, causation, not local circuit “policy,” was taken to drive the decision to affirm the district court’s grant of Judgment as a Matter of Law to the Defendant.
The Webber case is a clear application of the Mt. Healthy rule requiring the presence of causational linkage between the conduct of those who are found to harbor discriminatory motivation and the making of the actual, challenged employment decision. It is, I suggest, not proper for this panel to depart from this holding. In this Circuit, each panel of the Court is bound by prior panel decisions directly on point. Jusino v. Zayas, 875 F.2d 986, 993 (1st Cir.1989).
The seminal holding of Webber, for present purposes, is that where the evidence fails to show that the final decision-maker is influenced adversely by the motivation of lower level actors, the type and level of causation required by Mt. Healthy is absent and must be recognized,[8] A second echelon of “but for” causational conduct will not suffice to bridge the gap between liability and damage that is created by the *109 absence of motivated eausational conduct of the final decision-maker. This case is much stronger than Webber because here that absence is established in the record whereas in Webber the contrary was established by concession of the Plaintiff (assuming the record is to be given any weight in appellate consideration) as a matter of law.
I suggest this panel is properly bound by the holding of the Webber case since it has not been subsequently overruled and no other exceptional circumstances apply to call in question the viability of that prior ruling. Mainegeneral Medical Ceter v. Shalala, 205 F.3d 493, 497 (1st Cir.2000); Williams v. Ashland Engineering Co., 45 F.3d 588, 592 (1st Cir.1995). The Webber decision was recently rendered, on August 9, 2005, and there is no circumstance that postdates that decision, “that offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.” Williams, 45 F.3d at 592.
Thus, I believe the judgment below should be reversed to comply with the applicable, direct holding of the United States Supreme Court in the Mt. Healthy case and the previously announced rule of decision in this Circuit under that precedent in the Webber case.

. The district court’s findings on this point were not appealed are not called into question for review on this appeal. I also note that on appeal Mr. Tejada argues that under Puerto Rican law an employee cannot be terminated for a conviction of domestic violence when the employee has engaged as he did in a rehabilitation program. However, Mr. Tejada did not file a cross-appeal challenging the district court's decision to grant Judgment as a Matter of Law to Secretary Fuentes. Therefore, the Court cannot reconsider this issue on appeal.

. Secretary Fuentes entered office in January 1997, after the articles were published in El Vocero.

. The majority states, "The question is whether the intervening steps — a final decision-maker acting on a permissible ground— should as a matter of policy (not lack of causation) insulate the wrongdoer from liability.” Id. at 12 (emphasis added).
This formulation evades rational footing as Mt. Healthy establishes it to be the dominant legal policy that "lack of causation” does, in fact, insulate from liability one whose conduct is not a motivating factor for the wrongful employment action. The majority has substituted its own policy for the holding of the United States Supreme Court.

. I believe that the majority's fundamental error here lies in its inability to accept and respect the fact that a seminal mistake was made by the district court at trial when it made the ruling insulating Secretary Fuentes from liability on the causation analysis of Mt. Healthy and then failed to recognize that its ruling also should have necessarily insulated Morales and Alvarez from liability. If it be correct that Fuentes is not liable because there is no causal link between his discharge action and the purportedly improper motivations of the minions, then it must also be that the minions are not liable because there is no causal link between their supposed motivations and the damage caused by the proper discharge by Fuentes.
Hence, once the district court made its ruling in favor of Fuentes, it should have also granted judgment in favor of Morales and Alvarez on the basis of that ruling. It was legally wrong to submit the case to the jury as to them because there was no evidentiary predicate, on the court's own finding, on which causation could be sustained.
I believe that it is not proper, as the majority would do, simply to ignore the fact that there is no rational basis in the record for these Defendants' liability. It is not right or reasonable to ignore the occurrence of and the legal significance of the error and to bless a judgment that is patently without any foundation in the law. A simple recognition of the force and effect of the error in assessing these Defendants' liability (e.g., that the judgment imposes liability without causation) will yield a legally sustainable result and respect the rights of these Defendants and the Agency to be insulated from liability because the Agency's final decision-maker acted properly.

. The majority attempts to dismiss the controlling effect of Webber by two peremptory and unexplained asides: (1) that the Webber panel "appears to assume arguendo” that the tainted action of an underling communicated to a pure-minded supervisor may be the basis for liability, and (2) that the Court found that the superior "had determined to terminate the employee on legitimate grounds before any contact with the supervisor [occurred] and that the supervisor had no causal influence on the firing.” Maj. op. at 102 (emphasis in original).
Both of these observations strike me as irrelevancies in understanding the Webber opinion, and they perpetuate the majority's unwillingness to recognize the direct and focused thrust of the holding in Mt. Healthy {e.g. that a pure-minded final decision-maker is, in effect, an efficient intervening cause destroying the existence of proximate cause between the adverse animus of others than the final decision-maker and the damage resulting from the employment decision).
The factual circumstances in Webber were that the underlings, Schaub and Moser, had made remarks that plaintiff claimed showed that they harbored discriminatory intent toward the plaintiff. There was no evidence that they ever told Oettinger, the final decision-maker, that plaintiff should be discharged in the RIF. The panel concluded that it would be, on the record, excessively speculative for a jury to conclude that "Moser conceivably 'influenced' the decision to fire [the plaintiff].” Id. at 237. The record showed, the panel found, that Oettinger, the plaintiff's ultimate superior and final decision-maker, had decided for proper reasons, to discharge the plaintiff. He then went to the underlings, Schaub and Moser, to notify them of his initial decision, not to seek their opinion, but rather to ascertain if he, Oettinger, had missed "any material termination-related facts.” Id. Schaub and Moser simply acquiesced in the decision, apparently without comment. The plaintiff conceded that they did not communicate to Oettinger any discriminatory animus that they may, in fact, have harbored. Id. at 236. Oettinger implemented the decision to discharge plaintiff.
What the panel "assumed arguendo” was clearly stated by the panel in the opinion.
[W]e shall assume arguendo that, even in the absence of any ... direct, affirmative communication between Oettinger and Moser, a supervisor’s silence (viz., his discriminatory failure to utilize the veto power conferred upon him by his employer) could constitute sufficient "participation” or "influence” to warrant imputing [the supervisor’s] purported animus to [the final decision-maker].
Id. at 237. This appears to me to be an appropriate understanding of the law under Mt. Healthy.
However, that understanding does not have the effect on the application of Webber here that the majority attribute to it. The operative finding of the panel in Webber was not that Oettinger made the discharge decision before consulting with Schaub and Moser but *109 rather that he made it without any influence from them, and it is easily argued from the panel's language that the panel assumed that had there been any evidence that the underlings had a bad animus toward plaintiff, the failure to exercise in favor of plaintiff the implicit "veto power” Oettinger gave them by consulting with them would have been a sufficient causative “influence” upon the final decision-maker for Mt. Healthy purposes to result in a triable issue of proximate cause. That is the controlling factual underpinning for the decision that the case should not have gone to the juiy because of the total absence of any evidence of causation. That is, in both respects, a correct application of the holding in Mt. Healthy. The state of mind of the underlings is irrelevant once it is established, as the panel in Webber found it to be, that that state of mind had no influence on the decision-maker. In such a scenario it is also irrelevant when, in the course of events, the final decision-maker reached his final decision.