**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 11-1618

ELSIE POLANCO-QUINONES,

Plaintiff, Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Salvador Medina De La Cruz on brief for appellant.
Sean Dalton Santen, Special Assistant U.S. Attorney, and Rosa Emilia Rodriguez-Velez, United States Attorney, on brief for appellee.

May 1, 2012

**Per Curiam**.  Claimant Elsie Polanco-Quinones appeals from the denial of Social Security disability benefits.  In relevant part, claimant alleged disability on the basis of a depressive disorder, and while the administrative law judge (ALJ) agreed that claimant's depression was severe, he concluded that this impairment would not prevent her from performing her past, unskilled work.  In so concluding, the ALJ decided not to give controlling weight to the opinion of claimant's treating psychiatrist that claimant essentially was disabled.  Because the ALJ failed to give sufficient reasons for this decision, a remand is required.

## I.  Treating Physician Opinion

Claimant's treating psychiatrist, Dr. Maria de los Angeles Pujols, submitted five reports covering the period from roughly October 2003 to May 2008.  In brief, these reports rated claimant as either extremely or markedly limited in her residual functional capacity (RFC) to engage in the basic mental demands of unskilled work:  "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  See Social Security Ruling 85-15, 1985 WL 56857, at *4.  Dr. Pujols also (1) consistently rated claimant's ability to maintain concentration and attention for extended periods as extremely limited, (2) consistently

-2-

observed that claimant exhibited psychomotor retardation, and (3) found various problems with claimant's memory.

The ALJ rejected these ratings and instead found that, since claimant had only mild to moderate restrictions in her ability to maintain concentration, persistence, and pace, she was precluded only from dealing with work situations involving complex instructions and intense pressure. At the hearing, a vocational expert (VE) testified that, with such abilities, claimant could perform her past job as a wire worker, and this is the evidence upon which the ALJ relied in concluding that claimant was not disabled.

Claimant argues that the ALJ did not give good reasons for essentially rejecting Dr. Pujols' opinions. Under the relevant regulation, a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Section 404.1527(d)(2) also provides that an ALJ <u>must</u> give "good reasons" for the weight accorded to a treating source's opinion.

Here, the initial difficulty is that the ALJ gave absolutely no reasons for his conclusion that Dr. Pujols' opinions were not well-supported. The Commissioner ignores this omission and,

instead, offers reasons why this conclusion is correct – <u>i.e.</u>, these opinions (1) do not reflect the use of medically acceptable diagnostic techniques, (2) lack contemporaneous objective findings, and (3) fail to present a longitudinal record of claimant's treatment. However, since we are not usually permitted to affirm agency action on grounds other than those advanced by the agency, we assume that the Commissioner is invoking the exception for situations where it is clear what the agency's decision must be. <u>See</u> <u>MaineGeneral Med. Ctr.</u> v. <u>Shalala</u>, 205 F.3d 493, 501 (1st Cir. 2000). The question, then, is whether, for the reasons given by the Commissioner, the ALJ's conclusion that Dr. Pujols reports were not well-supported is mandated by the record evidence.

Beginning with Dr. Pujols's diagnostic techniques, she used essentially the same tests as the two consulting psychiatrists who had examined claimant. In particular, Dr. Pujols tested claimant's memory and concentration by having her (1) subtract in series of three and seven, (2) recite in reverse order the days of the week and months of the year, (3) repeat words, and (4) recall events and topics of conversation. The consultative examiners used virtually identical tests, having claimant (1) repeat a series of four numbers, (2) perform simple addition and subtraction, and (3) recite the months of the year backwards. Since the Commissioner fails to give any reasons why these tests do not qualify as

"medically acceptable," and we can see none, it is clear that Dr. Pujols' reports were not defective in this respect.

The Commissioner also is wrong that Dr. Pujols' reports lacked "objective" findings. Under the regulations, such findings, or "medical signs," see 20 C.F.R. § 404.1512(b)(1), are defined, in relevant part, as "psychological abnormalities which can be observed" and which "can be medically described and evaluated." Id. § 404.1528(b). Such abnormalities, in turn, include "abnormalities of behavior, mood, thought, memory, orientation, development, or perception." Id.

Here, Dr. Pujols completed two Social Security Administration forms that asked her to identify claimant's "signs and symptoms." Among the signs that Dr. Pujols checked as applying to claimant were (1) decreased energy, (2) generalized anxiety, (3) persistent disturbances of mood or affect, (4) difficulty thinking or concentrating, (5) motor tension, (6) memory impairment, (7) blunt, flat, or inappropriate affect, and (8) disorientation as to time. Dr. Pujols also completed other forms and provided similar information concerning claimant's psychological abnormalities.

This leaves the Commissioner's arguments that Dr. Pujols' opinions were defective because her findings were not "contemporaneous" and because the opinions failed to present a "longitudinal record" of her treatment of claimant. Taking the latter contention first, it is meritless. Dr. Pujols filed five

-5-

reports which covered over four years of claimant's treatment, and the Commissioner offers no reasons why such an amount of time is insufficient.

Last, the Commissioner does not explain what he means by "contemporaneous," and he cites no support for his position that such is required before a treating source's opinion may be found to be well-supported. In the case at hand, Dr. Pujols completed one of her reports two days after her session with claimant and completed three other reports within four weeks of the most recent sessions. Given Dr. Pujols' long relationship with claimant, along with the Commissioner's failure to explain why a four-week delay in filling out reports in such a situation renders them unreliable, his argument in this regard fails. Based on all of the above, then, the record simply does not mandate the conclusion that Dr. Pujols' reports were not "well-supported."

Turning to the issue of the reports' inconsistency with other "substantial evidence" in the record, the ALJ, aside from the reports of Dr. Pujols, reviewed only a report from Dr. Pablo O. Perez Torrado, one of the consulting psychiatrists who had examined claimant. We therefore assume that Dr. Perez's opinion constitutes the inconsistent evidence. In this regard, the ALJ noted that Dr. Perez had found that claimant (1) was coherent, logical, and relevant, (2) presented no thought disorders, (3) was oriented in

place and person, (4) could identify what she had done in her prior job, and (5) had intact judgment.

There are two reasons why reliance on Dr. Perez's opinion was misplaced. First, Dr. Pujols made findings similar to those cited above when she described claimant as (1) coherent and rational, (2) oriented most of the time, and (3) usually having intact judgment. Second, the ALJ omitted the parts of Dr. Perez's report that found <u>deficits</u> in claimant's functioning, and, again, these deficits are like the ones described by Dr. Pujols. In particular, both doctors viewed claimant as having problems with her memory, and Dr. Perez described claimant's capacity for maintaining concentration and attention as "diminished" – <u>i.e.</u>, claimant could not perform simple addition or subtraction. Given that these findings do not <u>contradict</u> Dr. Pujols' opinion that claimant was extremely limited in this regard, Dr. Perez's report cannot form the basis for the ALJ's conclusion that the opinions of Dr. Pujols were inconsistent with other substantial evidence in the record.

Perhaps realizing this, the Commissioner contends that the ALJ, in fact, had determined that the inconsistent evidence was comprised of the RFC assessment of a non-examining, state agency psychologist, Dr. Luis F. Umpierre Vela. The ALJ, however, never mentioned such assessment anywhere in his decision, despite the requirement that he do so. See 20 C.F.R. § 404.1527(f)(2)(ii) ("[u]nless a treating source's opinion is given controlling weight,

the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant"). So as to avoid confusion on remand, we nonetheless will treat the ALJ's reliance on this opinion as implicit in his decision.

Here, since the VE testified that claimant could perform her past job if one accepted Dr. Umpierre's RFC assessment, we will assume, without deciding, that the required inconsistency exists. The question, then, is whether this opinion constitutes "substantial" inconsistent evidence, and the answer depends on "the degree to which [it] provide[s] supporting explanations." Id. § 404.1527(d)(3). Unfortunately for the Commissioner, Dr. Umpierre's explanation is far from adequate.

In this regard, Dr. Umpierre made only three findings relative to claimant's ability to engage in the mental demands of work: (1) she was depressive; (2) she exhibited psychomotor retardation; and (3) she had diminished concentration and memory. Of course, since these findings represent deficiencies in claimant's functioning, they say nothing about what she can do. And, although a second nonexamining psychologist, Dr. Orlando E. Reboredo, affirmed Dr. Umpierre's RFC assessment, Dr. Reboredo's comments add nothing. Thus, since Dr. Umpierre's findings, by themselves, are inadequate to support his RFC assessment, more in the way of explanation was required.

This is especially true in light of the finding that claimant exhibited psychomotor retardation, an observation that Dr. Pujols consistently made and that Dr. Alberto Rodriguez Robles, the other examining psychiatrist, also noted. The term "psychomotor" refers to voluntary muscle movements, and "psychomotor retardation" is defined as "[a]n overall slowing of movement, speech, and mental processes." 5 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine, at P-520.1 to P-520.2 (2011). We think that a slowing of mental and physical abilities, along with diminished concentration and memory, may represent significant limitations, and, as the VE testified, most jobs have production quotas, a requirement a person with such limits could have trouble meeting.

In conclusion, then, Dr. Umpierre's opinion cannot be considered to be "substantial" evidence inconsistent with the opinions of Dr. Pujols. See Berrios Lopez v. Secretary of Health and Human Services, 951 F.2d 427, 431 (1st Cir. 1991) (per curiam) (where reports from nonexamining sources "contain little more than brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity, [such reports] are entitled to relatively little weight"). As a result, the ALJ failed to give supportable reasons for not according controlling weight to Dr. Pujols' opinions, and this ends the matter.

We therefore <u>vacate</u> the district court's judgment and direct that court to <u>remand</u> the matter for further proceedings consistent with this opinion.  No costs are awarded.